Judy R. LAMPERT, Plaintiff and Appellee,

v.

Arthur A. LAMPERT, Defendant and Appellant.

No. 15124.

Supreme Court of South Dakota.

Considered on Briefs March 19, 1986.

Decided June 11, 1986.

Wilson Kleibacker, Lammers, Lammers, Kleibacker & Casey, Madison, for defendant and appellant.

Sidney B. Strange, Strange & Palmer, Sioux Falls, for plaintiff and appellee.

SABERS, Justice.

This is an appeal from an order denying appellant Arthur A. Lampert's (husband) motion to eliminate or reduce alimony payments. We affirm.

### Statement of Facts

Husband and Judy R. Lampert (wife), were married on July 3, 1963, in Sioux Falls, South Dakota. Two children were born of this marriage. Both had attained their majority at the time of this action. The parties were divorced on September 17, 1969, after six years of marriage. At that time, they owned no real property and had limited possessions. Although she had a four-year degree from the University of South Dakota, wife was then at home with the minor children. At the time of the divorce, husband was an intern at McKen-

nan Hospital in Sioux Falls, and was earning a minimal salary.

The Judgment and Decree of Divorce (Decree), stated in pertinent part:

2. That the division of property and custody of the minor children of the parties shall be in accordance with an Agreement between the parties, marked Exhibit "1", and filed herein.

Husband and wife executed a Custody, Support and Property Settlement Agreement (agreement), on May 1, 1969. This document was not filed with the court until July 8, 1985.

Paragraph five of the agreement provided that wife shall have the custody and control of the minor children who were then 5½, (Arthur A., Jr.), and 2½, (Rachel A.), years of age, respectively. Paragraph six stated the following:

Arthur A. Lampert, Second Party, agrees to pay to First Party, Judy R. Lampert: (a) the sum of $300 per month as alimony for the support of the said Judy R. Lampert; (b) the sum of $100 per month for the support of the two minor children heretofore mentioned; (c) all United States income taxes that may become due on any of the foregoing sums; (d) any additional, reasonable sums necessary for the medical and dental treatment of the said minor children; and (e) pay the premium on an automobile liability insurance policy for First Party, said policy to provide the coverage which is currently in force, said premium payments by Second Party to cease upon First Party's remarriage.

Paragraph nine provided that wife will have title and possession of the household goods, furniture, and the 1966 Buick automobile. Paragraph fourteen stated the following:

It is further agreed between the parties that in the event said Judy R. Lampert, First Party, should after entry of the final decree, remarry, said alimony payments as hereinabove provided shall cease, but that the said child support payments will be increased to a sum not less than $125 per month per child.

Finally, paragraph fifteen provided, among other things, that when the children obtain their legal majority, husband's support obligation shall cease, be reduced, or terminate.

At the time the parties were divorced in September of 1969, husband knew that he was suffering from multiple sclerosis, (MS). However, he was then in a period of remission, feeling well, working full-time as a physician, and had not yet accepted the fact that this disease would eventually have a catastrophic effect on his physical well-being. MS is a chronic disorder of the nervous system, and a progressively debilitating disease, manifested with flares and remissions, but a disease progressively deteriorating over time.

In 1972, husband developed a right sided Bell's Palsy from which he has had a partial recovery. In 1977, increasing fatigue speech and balance problems began to develop. Additionally, in August of 1977, he suffered a severe episode which resulted in a period of blindness, hospitalization for ten days, and a slow improvement of function over the following three months. His condition has never improved to the state prior to the August 1977 episode.

By agreement of the parties, Arthur A., Jr., began living with his father in Madison, South Dakota, in 1979. He was then 15½ years old. Husband and wife entered into a stipulation which modified the Decree to this effect, and they also agreed that husband would increase his payment to $100 per month for Rachel's support, as she continued to live with wife in Sioux Falls. Thereafter, husband assumed the sole support of his son.

In September of 1983, Rachel, who was then 16 years old, moved into her father's house. Husband then assumed full responsibility for his daughter and by informal agreement between the parties, child support terminated. However, husband continued to pay wife $300 per month in alimony. Rachel turned 18 in March of 1985.

Wife's monthly expenses are: $1,140.65. She takes home income of $838.50 per month from a gross salary of $14,300.00 per year. She sustained a severe neck injury as a result of a car accident in March of 1985, which has substantially restricted her activities. She also suffers from chronic back problems which require her to seek physical therapy once or twice a year. She also suffers from agoraphobia, (the fear of open or public spaces), and an anxiety reaction for which she has been in psychotherapy at the Central Plains Clinic for the last six years. Therapy sessions cost $72 per visit. Her insurance covers only $25 per visit. The psychotherapy is an on-going process, and she is required to take medication for the above described condition.

Based on the foregoing, wife argues that she needs the $300 alimony payment in order to pay her ordinary, monthly living expenses. She contends that her 1977 Buick automobile is ready for the junk heap; that her house needs necessary repairs that she cannot afford to make; that after the divorce she continued to raise the children on the support she received from husband together with her full-time earnings from employment outside the home; and that she has never asked for an increase in support or alimony, (even though husband's income had steadily increased over the years), because she made it a point to raise the children on her own.

According to husband, he grosses $4,166 per month or approximately $49,992.00 per year, and his monthly expenses total approximately $5,206. He claims he has insufficient funds to meet his expenses, and that he has already borrowed from his life insurance several times. The last time was as recently as 1984.

He owns one vehicle: a 1973 pickup truck, and leases another one for which he receives an automobile allowance from his current employer of $450 per month. He is presently paying for his daughter's education at Dakota State College.

According to his physicians, husband's MS will get progressively worse until he is unable to work altogether. He was examined by his personal physicians, Dr. K.G. Koob (neurologist) of Sioux Falls, and Dr.

K.L. Wilde (G.P.) of Madison, in October and November of 1984, respectively. Both doctors agreed that husband's MS symptoms were getting progressively worse, and that he had suffered from a marked deterioration in his neurologic functioning in the past year. It was the recommendation of these doctors that husband cut back on his hours due to his medical condition, or quit altogether. Dr. Koob stated in his letter of November 16, 1984, "I would anticipate that we will never in the future see a time when he is able to go back to the full time rigors of his family practice." At the time of trial, husband had reduced his working hours, discontinued taking obstetrics patients, and was no longer on call at the Madison Clinic, Ltd., where he practiced medicine. As such, his income had been reduced by 41%. He has disability income insurance through his employer which would pay him $1,500 per month upon total disability. However, his policy specifically deducts any disability income that he might receive from Social Security or the Veterans Administration.

On May 22, 1985, husband moved the trial court to eliminate his alimony payments. On September 18, 1985, the trial court found:

> That there has been a substantial material change in circumstances since the divorce in that the Defendant's health has seriously deteriorated resulting in his taking a forty-one percent (41%) pay cut.

> That the Defendant still has sufficient funds to pay his alimony obligation and despite the change of circumstances the sum of $300.00 per month is a reasonable amount for alimony and alimony shall continue.

The trial court further concluded that husband should pay alimony arrearages of $600 to wife, (which payments husband had held in abeyance pending the trial court's decision); that each party should pay their own attorneys fees; that paragraph fourteen of the parties' original Property Settlement Agreement was proper; and that since the youngest child had reached the age of eighteen, husband no longer has the obligation to pay Plaintiff child support.

### Claims of the Parties

On appeal, husband argues that the trial court abused its discretion in failing to find that his medical condition and resultant loss of income warranted a decrease or elimination of his alimony obligation. He further contends that paragraph fourteen of the agreement constitutes an impermissible combination of alimony and child support payments. Wife petitions this court for an award of attorney fees incurred as a result of this action.

### Alimony Payments

In *Lambertz v. Lambertz,* 375 N.W.2d 645 (S.D.1985), we wrote that the "substantial change of circumstances" standard necessary for modification of child custody provisions is not applicable in a proceeding to modify alimony. *Id.* at 646. Therefore, to justify a change in alimony payments there must merely be a change of circumstances. *Id.* In a proceeding for modification of alimony, the burden of proving a change in circumstances sufficient to warrant modification is upon the party seeking modification. *Rousseau v. Gesinger,* 330 N.W.2d 522, 525 (S.D.1983); *see also:* SDCL 25–4–41. This court will not disturb an award of child support or alimony unless it clearly appears that the trial court abused its discretion. *Straub v. Straub,* 381 N.W.2d 260 (S.D.1986).

■ The record indicates that wife has raised two children and has made a sacrifice for them and sublimated herself to their needs. Now that the children have reached maturity, she is not here arguing for the continuation of the alimony payments to pursue the frivolities of life. Rather, the evidence shows that she needs this money to meet her ordinary monthly expenses, exclusive of any luxuries. As such, we determine that the present alimony award, and husband's ability to pay it, is not so inconsistent with his income so as to warrant an abuse of discretion. *See: Straub,* 381 N.W.2d at 362.

Although it is not specifically stated in the record, we can estimate that husband was previously earning an annual salary in excess of $80,000. Unlike wife, that type of income may have enabled him to make investments, and thus, plan for the unfortunate outcome of his medical condition. However, he has failed to establish this on the record. From this record, wife's earnings have never provided her with the flexibility to generate additional income, and then coupled with the alimony, sit in idleness. Since he has failed to provide the trial court with a complete detailed financial position, his ability or inability to pay is impossible to determine and therefore, he is not entitled to any relief.

■ We do not ignore the fact that husband has MS, and as a consequence thereof, has reduced his working hours under doctors orders. However, the record shows that he is still functioning as a competent family physician. Although husband contends that he will suffer a complete loss of income due to his total disability from MS, this evidence, is speculative given the nature of his illness. As we noted in *Guindon v. Guindon*, 256 N.W.2d 894, 899 (S.D.1977) "... respondent makes dire predictions of the future decrease in his income. If his income should decrease and/or the appellant's income increase, he may petition the trial court for a modification under such a change of circumstances." So too if the present alimony award becomes so totally disparate with husband's future income, which may be reduced dramatically because of his illness, then he may petition the trial court for a modification.

Wife earns a gross salary, as a secretary, of $14,300 per year. Husband, a family practitioner employed at the Madison Clinic, Ltd., grosses $4,166 per month, or approximately $49,992 per annum. Therefore, despite the fact that husband's income was reduced by 41% effective May 1, 1985, the record shows that he continues to earn more than three times wife's annual salary.

Under all the facts and circumstances, therefore, we hold that the trial court did not abuse its discretion in concluding that husband still has sufficient funds to pay his alimony obligation, despite the change of circumstances relative to his illness, and that the sum of $300 per month is a reasonable amount.

### Child Support Improperly Named Alimony

■ We have considered husband's arguments that paragraph fourteen of the original agreement improperly provides for child support under the name of alimony and that such payments should cease upon the youngest child reaching her majority. We find these arguments to be without merit and affirm the trial court's conclusion:

That paragraph XIV of the original Property Settlement Agreement is proper in its form and does not have the effect of actually making the child support greater than the $100.00 per month listed, or the alimony less than the $300.00 per month listed in the original Decree, and does not name child support as alimony from its inception, but rather lists a condition under which alimony will change into child support, a condition that was not met.

### Attorney Fees

■ Wife petitions this court for an award of attorney fees and costs. Inasmuch as her petition comports with the guidelines set forth in *Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985), we further hold that husband shall pay wife's attorney fees, tax and costs in accordance with the affidavit on file herein.

We affirm the trial court in all respects, and grant wife's petition for attorney fees.

MORGAN and WUEST, JJ., concur.

FOSHEIM, C.J., concurs in part and dissents in part.

HENDERSON, J., dissents.

FOSHEIM, Chief Justice (concurring in part, dissenting in part).

In recognition of husband's present gross earnings of $4,166 per month, it is difficult to find abuse of trial court discretion in denying modification of the $300 per month alimony award to wife. I, therefore, join in affirming that decision.

I dissent, however, on the award of appellate attorney fees to wife. Such an award rests in the discretion of this court. SDCL § 15–17–7. When considering, as we must,[1] the nature and extent of each parties' assets and income and the basis for this appeal, I cannot conclude that husband should be burdened with attorney fees for both parties.

HENDERSON, Justice (dissenting).

Appellant, a doctor, suffers from a permanent, progressively disabling disease known as multiple sclerosis. He is but 44 years of age but, with great courage, battles on in life and continues to try to maintain the practice of medicine.

Appellee, a college graduate, enjoys excellent health and is employed full-time in South Dakota's largest daily newspaper, the *Argus Leader*, in Sioux Falls. Her representations of ill health (bad back, as an example—two treatments per year) ring hollow. Her phobia is in no way disabling and does not prevent her from holding down a full-time job. Her "severe neck injury" is totally unsupported by any medical testimony or supporting affidavit. In view of her uninterrupted and permanent employment, and not demonstrating large medical expense or corroboration by medical expertise, it is highly suspect that appellee truly suffers serious physical ailments which prevent her from living a normal life. One notes that she builds her required expenses by a showing in her affidavit that she gives gifts of $50 per month and spends $125 per month for "miscellaneous and entertainment." One cannot discern from any showing that she must maintain an office or has a continual education pursuit of any kind; yet, she claims $35 per month for "educational and office expenses." This aggregates $210 per month of, out and out, puffing and exaggeration.

For 16 years, the parties have been divorced; lo, these many years, appellant has paid her smart money, i.e., alimony, but the load in life grows heavy and the yoke of pain intensifies. Rest? Peace? Appellant supplicates. For 16 years hath he paid her alimony; for six years only was he married unto her. If alimony was a necessity as a by-product of this marriage, has not time sown a new moral consciousness?

Appellant's earning capacity is changed and impaired. A diminishment in income of over 40% exists. Still, appellee would remain in the army of alimony drones.

Due to this continued deterioration in appellant's health, all alimony should be terminated. By her brow, let her toil for her own bread. An affidavit of Dr. Wilde, one of appellant's attending physicians, revealed:

[A] deterioration in [appellant's] state from previous examinations. That deterioration included a marked worsening of the following:

(1) ataxia (balance);

(2) hyperreflexia (which is an indication of new nerve damage within the brain);

(3) marked neurologically induced rectal dysfunction (no ability to control bowel movements);

(4) a neurogenic bladder (this requires manual pressing on the lower stomach in order to urinate);

(5) marked hearing defect (he has hearing aids for both ears and he uses a special stethoscope with an amplifier in his practice of medicine);

(6) fatigue inducing speech defect (when he is tired even though his thought processes are good he cannot follow through with a complete sentence without stopping and restarting);

---

1. The Supreme Court reviews the same factors as does a trial court when determining whether a portion of attorneys fees, if any, should be allowed as costs for divorce cases on appeal. *Harvey v. Harvey*, 383 N.W.2d 862, 864 (S.D. 1986).

(7) severe episodic vertigo (dizziness— this is different than the condition stated in number 1 above which is a staggering condition as opposed to this which is dizziness);

(8) marked limitation of walking and stair walking;

(9) marked heat intolerance (heat fatigues his nerves; an example, if he is in a hot bathtub, he has difficulty climbing out because of the heat fatiguing his nerves);

(10) bilateral Raynaud's (when he is out in the cold both his hands will turn white rather than retain their natural color. The arteries spasm because of nerve damage to the hands from multiple sclerosis);

(11) patient voluntarily has quit driving at night because of vertigo and dysmetria (he has problems with dizziness and depth perception).

Does this read like a man who should pay alimony? *Ought* he to pay alimony? *See Straub v. Straub,* 381 N.W.2d 260 (S.D. 1986); and *Grant v. Grant,* 5 S.D. 17, 57 N.W. 1130 (1894).

Dr. Koob has strongly advised appellant to reduce his workload indicating that to continue to work as he has been will hasten the progressive nature of the disease. Appellant's physical and economic condition, present and future, appear bleak. His doctor affirms his condition will only worsen. Must he drive his ravaged body to total destruction to pay alimony? God forbid that the law, a beautiful conduit to heal wrong, does hereby create wrong. Appellant's affidavit reflects that he has borrowed time and time again on his life insurance; he turned in his car because he could not make payments on it; he drives a 1973 pickup truck and leases another vehicle. Lacking stamina, he has given up all recreation and his doctors advise him to rest. But, can he rest when he is faced with alimony payments? Alimony, employed as it is here, is an instrument of servitude and oppression.

Employing my eighth-grade arithmetic, supplied by the affidavits, I note that ap-

pellant's expenses total $5,206.86. Each itemization of expense appears to be totally valid; one hobby or recreational pursuit does entail $234 for "recreation (horses)." If one were to subtract this, still the money is not there for the alimony payment. Appellant's expenses exceed his salary. And, as he continues to disintegrate, which is totally predictable by his doctors' statements as reflected by the file, his income will diminish. There only must be a. change of circumstances to sustain a change in alimony. *Lambertz v. Lambertz,* 375 N.W.2d 645 (S.D.1985). A change of circumstances doth here exist. It is undisputed and is so recognized under Conclusion of Law 2, which provides: "That there has been a substantial material change in circumstances since the divorce in that the Defendant's health has seriously deteriorated resulting in his taking a forty-one percent (41%) pay cut." Therefore, let us harken unto the teaching of *Lambertz.* Notwithstanding this finding, the trial court found in Conclusion of Law 3: "That the Defendant still has sufficient funds to pay his alimony obligation and despite the change of circumstances the sum of $300.00 per month is a reasonable amount for alimony and alimony shall continue." With Conclusion of Law 3, I respectfully disagree under the rationale of this dissent. A body of law exists for. the general proposition that, in a case such as we have here, alimony should abate and/or terminate. This is founded upon the justice of the case and where an obligor spouse has suffered a serious impairment of health or physical condition which results in a decrease or cessation of income, thus obviously impairing payment of alimony. *See* 24 Am.Jur.2d *Divorce and Separation* § 713 (1983).

Appellant's *gross* income seems to attract great attention by the majority. It is respectfully suggested that it is the net income which is paramount, not the gross income. First the son came to live with the father and he did support his son; then the daughter came to live with the father and he did support her, also. This record sug-

gests a courageous struggle to maintain a personal existence of the appellant and his two children. Laboring under insurmountable odds, he has generously and graciously also supported his ex-wife. Now, with his doctors advising him, essentially, to recede from his practice and rest or die, he lays his cards on the table and implores the Lady of Equity for amelioration. She should hear his supplication.

We have here before us a continuation of the punishment of the male species—in law. *See* collection of numerous dissents by this author on alimony in *Cole v. Cole,* 384 N.W.2d 312, 318 (S.D.1986) (Henderson, J., concurring in part and dissenting in part). Appellee can work, does work, enjoys good health, and a good life. Why must she flog, by alimony payments, this seriously ill man—further shortening his life? Appellant has met his burden of proof of "change of circumstances"; deeming an abuse of discretion (survival, life itself, should be elevated over alimony payments), I respectfully dissent. I fully appreciate the trial court's discretion is a broad one but it is not uncontrolled. It must be soundly and substantially based upon the evidence. *Owen v. Owen,* 351 N.W.2d 139 (S.D.1984).

Seven pages exist by way of request for appellee's attorneys fees; four pages are contained in appellee's brief. Not for this isolated reason, but for the principal reason that appellee would not be the prevailing party, I would accordingly deny attorneys fees. Let those who trumpet the horn of alimony—hear an echo of dismay.