Michael L. GUNN, Plaintiff and Appellant,

v.

Lore E. GUNN, Defendant and Appellee.

No. 17953.

Supreme Court of South Dakota.

Considered on Briefs May 26, 1993.

Decided Sept. 8, 1993.

Rehearing Denied Oct. 15, 1993.

Cecelia A. Grunewaldt, Sioux Falls, for plaintiff and appellant.

Dennis C. McFarland of McFarland & Nicholson, Sioux Falls, for defendant and appellee.

AMUNDSON, Justice.

Michael L. Gunn (Michael) appeals from a judgment awarding Lore E. Gunn (Lore) past alimony and holding Michael in contempt for failure to make alimony payments previously ordered by the court. We affirm.

## FACTS

Michael and Lore were divorced by entry and decree of divorce on July 7, 1982. The judgment provided that Michael was to pay Lore $65.00 per week in alimony "until [Lore] becomes deceased or remarries[.]" The alimony agreement was based upon circumstances that were dictated into the record at the time the parties presented their stipulation and agreement to the court for its approval. Unfortunately, no transcript of the divorce proceedings could be located and thus there is no record of what the circumstances for the alimony agreement were.

Michael paid Lore $65.00 a week in alimony from the time of divorce until mid-June 1986 when he became unemployed due to a strike at John Morrell's. The court entered a contempt order against Michael in October 1986 for past-due alimony. Michael borrowed money from his mother and sister and expunged himself of contempt by paying the past-due amount.

Following the contempt order, Michael resumed making weekly $65.00 payments to Lore through April 27, 1987. At that time, Michael believed that Lore was cohabitating and he was under the mistaken impression that he could cease alimony payments for that reason. Michael has never resumed making alimony payments.

Michael returned to work at Morrell's in May 1988 and continued to work there until his retirement on November 30, 1988. Michael had made plans to begin a job building hog confinement buildings upon his retirement but, as the result of a stroke suffered on December 10, 1988, was unable to start the job. Michael attempted to work at several jobs until he was declared disabled by the Social Security Administration on September 20, 1990, as the result of his illiteracy and physical disabilities.

In late 1991, Michael sold one of two properties he owned. Michael attempted to obtain clear title in 1992 by having the court satisfy the October 1986 alimony judgment which he had paid. Michael contemporane-

ously filed a motion to modify the judgment and decree of divorce based on a change in circumstances. Lore responded by filing a motion to show cause as to why Michael should not be held in contempt for failure to pay alimony since April 1987.

The court entered an order for satisfaction of the October 1986 judgment, but held the proceeds from the sale of Michael's property in escrow. The court further denied Michael's motion for a change in circumstances, entered a judgment for Lore for past-due alimony, and held Michael in contempt. Michael appeals.

## ISSUES

1. Whether the trial court abused its discretion in denying Michael a modification of alimony and holding him in contempt for failure to pay alimony past due?

2. Whether the trial court erred in holding jurisdiction over Michael's homestead proceeds?

## ANALYSIS

*Modification and Past–Due Alimony*

■ Michael asserts that the trial court abused its discretion when it refused to modify his alimony obligation and held him in contempt for his failure to make alimony payments since 1987. A trial court may modify support orders from time to time. SDCL 25–4–41. However, an alimony award may not be modified unless there is a change of circumstances from those that existed at the time of the original decree. *Foley v. Foley*, 429 N.W.2d 42, 45 (S.D.1988). The party seeking modification bears the burden of proving the change in circumstances. *Id.* We review the trial court's decision to modify an alimony award under the abuse of discretion standard. *Id.* "An 'abuse of discretion' is discretion exercised to an end or purpose not justified by, and clearly against, reasoning and evidence." *Horr v. Horr*, 445 N.W.2d 26, 28 (S.D.1989).

In assessing a change in circumstances, we consider a change in the necessities of the recipient and the financial ability of the obligor. *Id.* Michael asserts that his circumstances have changed in that he has retired, suffered a stroke, been declared disabled by the Social Security Administration and, accordingly, suffered a change in his income. He likewise asserts that Lore has a higher income than she did at the time of the divorce and thus does not have as great of a need for alimony.

■ The record indicates at the time of the divorce that Lore worked only sporadically due to health problems. Following the divorce, Lore moved to the state of Washington and obtained employment. She has reported adjusted incomes of $25,490.00 for 1990 and $32,246.00 for 1991. The court found, however, that there was a substantial likelihood that Lore would be laid off from her job at Boeing in the near future due to projected layoffs. In addition, Lore continues to suffer from a number of health problems, including pulmonary and cardiac diseases which often impair her ability to work. With the evidence of the likelihood of Lore's job terminating in the near future and her continuing health problems, we do not find that the trial court abused its discretion in finding that her need for alimony had not changed. *See Lampert v. Lampert*, 388 N.W.2d 899, 902–03 (S.D.1986).

■ Michael's income tax returns indicate that he has had adjusted income of $12,982.66 for 1987, $19,676 for 1988, $4,173.00 for 1989, $6,352.00 for 1990, and $3,956.00 for 1991. The incomes for 1988 through 1991, however, are somewhat misleading, as they include losses of between $2,500.00 and $7,800.00 on rental property that Michael rented to his son.[1] In addition, the 1990 and 1991 incomes do not include Michael's monthly social security disability payments of $974.00 ($11,698 annually). Therefore, while Michael's income has been effected by his retirement, his income tax returns are not an entirely accurate reflection of his income. Michael's current income comes from his

---

1. The losses on the rental property are a result of mortgage payments and property taxes which exceed rental income. In addition, Michael was able to deduct depreciation on the rental property from his income.

pension and social security payments as opposed to wages. His annual income is still approximately $16,858.00 ($5,160.00 annual pension + $11,698.00 annual disability). In addition, Michael has $32,000 in net proceeds from the sale of real estate (more thoroughly discussed in Issue 2) and has managed to accumulate $5,000 in bonds since the divorce. Despite his change in circumstances, Michael still has sufficient funds to pay his alimony obligation. Under the established precedent of this court, we cannot say that the trial court abused its discretion in finding that Michael had the financial ability to make the weekly $65.00 alimony payments. *See Lampert*, 388 N.W.2d at 903.

■ Furthermore, Michael was accordingly in contempt for his almost five years of nonpayment of alimony. In 1987, Michael, of his own accord, quit making the alimony payments dictated by the divorce decree. Michael took no action to petition the court for any type of modification until he had accumulated nearly five years of arrearages and needed to obtain a clear title to sell some real estate. Past-due support obligations are modifiable only as to the date of filing of a petition for modification. SDCL 25–7–7.3. Michael cannot come before this court now and expect five years of nonpayment of his support obligation to be erased. The trial court did not abuse its discretion in holding Michael in contempt for alimony arrearages beginning in April 27, 1987.

*Homestead Proceeds*

In 1992, Michael sold one of two pieces of real estate that he owned for $32,000.00. The court held the proceeds from the sale in escrow pending resolution of the modification and alimony dispute. After the trial court entered its judgment against Michael for arrearages, Michael was required to deposit the judgment amount with the trial court before he could obtain the balance of the real estate proceeds. Michael asserts that the proceeds from the sale were homestead proceeds and thus exempt from judgment.

South Dakota law provides protection from attachment, liens, and other final process ordered by the court for homesteads and the proceeds from the sale of the homesteads.

A homestead:

(1) As defined and limited in chapter 43–31, is absolutely exempt; or

(2) In the event such homestead is sold under the provisions of chapter 21–19, or is sold by the owner voluntarily, the proceeds of such sale, not exceeding the sum of thirty thousand dollars, is absolutely exempt for a period of one year after the receipt of such proceeds by the owner. . . .

SDCL 43–45–3. Judgment creditors are similarly prevented from obtaining liens on the homestead. SDCL 15–16–7.

■ The purpose of the homestead exemption is to provide the security of a home to a family against the claims of creditors. *Speck v. Anderson*, 318 N.W.2d 339, 343 (S.D.1982). "The spouse and any children are not outside creditors, but *are* the family. The exemption cannot be used to harm the ones it is designed to protect." *In re Application of Jensen*, 414 N.W.2d 742, 745–46 (Minn.Ct. App.1987).

■ A divorce court, being a court of equity, possesses the power to impose a lien upon a homestead for purposes of spousal or child support. *Kerr v. Kerr*, 74 S.D. 454, 459, 54 N.W.2d 357, 360 (1952) (quoting *Harding v. Harding*, 16 S.D. 406, 412–13, 92 N.W. 1080, 1082 (1902)). In neither *Harding* nor *Kerr*, did the original divorce decree provide a lien upon the husband's property for alimony or support. Rather, the court found that "both under the liberal provisions of our statute and the general powers invested in courts of equity, it was perfectly competent for the circuit court to so far modify the original judgment as to make the alimony a lien upon the homestead in the possession of the defendant." *Harding*, 16 S.D. at 412–13, 92 N.W. at 1082; *Kerr*, 74 S.D. at 459, 54 N.W.2d at 360 (quoting *Harding* ). The Minnesota Court of Appeals has similarly stated: "The court's equitable powers override the application of the homestead exemption." *Jensen*, 414 N.W.2d at 746.[2]

2. In 1987, the Minnesota Legislature revised its homestead statute to exempt out judgments for

We do not find that the trial court abused its discretion in escrowing the proceeds from the sale of Michael's real estate for a judgment of alimony arrearages. Michael owned two pieces of real estate: one in which he lived and one which he rented to his son. Michael planned to use the proceeds from the sale of the property on which he was living to pay off the remaining mortgage on his second property to which he was moving. Escrowing the sale proceeds did not deprive Michael of a home; permitting Michael the use of the homestead exemption deprives Lore of five years of alimony to which she was entitled. Michael made an independent, inappropriate decision to terminate his alimony payments in 1987 notwithstanding his knowledge of the divorce decree in this matter. Equity will not afford Michael the luxury of paying off the mortgage on a second property he owns with proceeds from the sale of the first when he has an outstanding judgment for alimony arrearages. The trial court did not abuse its discretion in placing in escrow the amount of money from the proceeds of his real estate sale necessary to cover alimony arrearages.

The order of the trial court is accordingly affirmed.

MILLER, C.J., and WUEST, J., concur.

SABERS, J., concurs in part and dissents in part.

HENDERSON, J., dissents.

SABERS, Justice (concurring in part and dissenting in part).

I vote to reverse on Issue 2.

At the time of the divorce decree, eleven years ago, Lore was awarded one of the two homes owned by the parties. Michael was awarded the other home, subject to the existing mortgage. While Lore subsequently sold her homestead and moved out of the State, Michael continued to build equity in his homestead. He recently sold it, netting approximately $32,000 in proceeds which he wishes to apply to the outstanding mortgage on his current residence and homestead.

Under South Dakota statutory law, the proceeds from the sale of a homestead are absolutely exempt for a period of one year after the receipt of such proceeds by the owner. Therefore, the trial court erred in concluding that the court has jurisdiction over the proceeds from the sale of Michael's homestead. SDCL 43–45–3(1) provides that a homestead is absolutely exempt and SDCL 43–45–3(2) provides in part:

In the event such homestead ... is sold by the owner voluntarily, the proceeds of such sale, not exceeding the sum of thirty thousand dollars, is absolutely exempt for a period of one year after the receipt of such proceeds by the owner.

As indicated in the majority opinion, judgment creditors are prevented from obtaining liens on the homestead. SDCL 15–16–7. There are no constitutional or statutory exceptions from these provisions for ex-wives. In view of these provisions, it is incumbent upon the party who wants security for the payment of future indebtedness to apply for same at the time of the divorce or at least shortly thereafter.

The two cases relied upon the majority are clearly distinguishable. In *Harding,* the court modified a divorce decree approximately two years later by ordering the sale of the homestead once possessed by both parties. In doing so, the court noted that, unlike this case, the husband had been awarded the homestead "on the theory ... that he would pay the alimony prescribed by the judgment promptly." *Harding,* 16 S.D. at 410, 92 N.W. at 1081. In *Kerr,* the court modified a divorce decree for child support less than two years later by ordering a lien against non-homestead property of the father until he had fully complied with the decree. *Kerr,* 74 S.D. 454, 54 N.W.2d 357 (*Kerr* simply held that the court had the power to impose a lien to secure future payments).

This present opinion approves a modification of the divorce decree which allows a lien on the proceeds from the sale of Michael's homestead almost ten years after the divorce. Under SDCL 43–45–3(2), there should not be any lien on these homestead

child support or maintenance arrears. Minn. Stat. § 510.07.

proceeds except for the portion exceeding $30,000.

An ex-wife should not be allowed to sit on her rights to alimony and then expect the courts to "bend the laws" to protect her in the same manner as she was entitled at the time of divorce. The trial court went too far. We should reverse on Issue 2.

HENDERSON, Justice (dissenting).

Under SDCL 43–45–3 and SDCL 15–16–7, the trial court was not entitled to hold the proceeds of Michael's homestead sale in escrow.

I agree that the purpose of the homestead exemption is to provide security of a family against the claims of creditors. *Speck v. Anderson*, 318 N.W.2d 339, 343 (S.D.1982). Despite the majority's use of Minnesota authority, *In re Application of Jensen*, 414 N.W.2d 742 (Minn.App.1987), the ex-wife who maintains her own homestead in Washington is no longer a part of Michael's family or homestead.

The statutes leave *no* room for discretion; they have not provided exceptions for any creditor to be favored over another. Fred Winkler, Comment, *Creditors and the South Dakota Homestead Exemption*, 17 S.D.L.Rev. 483, 495 (1972). The homestead exemption cannot be used to harm the ones it is designed to protect. The law protects Michael's homestead—a homestead to which Lore has no familial attachment. Thus, she is a creditor like any other creditor.

Here, we have an illiterate, physically disabled man, who suffered a stroke, and whose living results through benefits by the Social Security Administration. He has no savings or investments and, essentially, he has a homestead and monthly disability payments. He sold this home due to financial hardship. An attack on the homestead proceeds struck with fury, and alimony was the sword of battle. She earns in excess of $32,000 a year. She does not need any alimony whatsoever to support herself. There has been a change in circumstances and it justifies a change in alimony payments. *Wegner v. Wegner*, 391 N.W.2d 690 (S.D.1986).

Under the ruling of this Court today, Michael Gunn's statutory homestead rights are cast to the wind and he is forced to move into some dilapidated rental property. Majority opinion cleverly refers to his homestead as a "property." Property it is, but it was his homestead and the proceeds are absolutely exempt. SDCL 43–31–1; SDCL 43–45–3(2). In the past, the South Dakota Supreme Court has recognized the head of the family, as reflected by our State Constitution.

South Dakota Constitution art. XXI, § 4 provides:

> The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forced sale a homestead, the value of which shall be limited and defined by law, to all heads of families, and a reasonable amount of personal property, the kind and value of which to be fixed by general laws.

*See Somers v. Somers*, 33 S.D. 551, 558, 146 N.W. 716, 718 (1914); *Linander v. Longstaff*, 7 S.D. 157, 63 N.W. 775 (1895); *Kingman v. O'Callaghan*, 4 S.D. 628, 57 N.W. 912 (1894).

"The homestead laws of this state are intended to prevent one spouse, in life or in death, from unilaterally depriving the other spouse of a homestead." *Gross v. Gross*, 491 N.W.2d 751 (S.D.1992). This was a unanimous decision in this Court. It is important to note that Michael is not depriving Lore of a place to live, she received one of their two houses in the divorce award. It appears that this Court's intent is to deprive Michael of his homestead, in contravention of our recent holding in *Gross*. She is not satisfied with one home, she wants two: Her home and the proceeds of his home. The majority relies upon the 1902 *Harding* case in this Court. It is inapposite because it is based upon a statute, which is not the law of this state anymore; and under which, the trial court had authority to assign the homestead of the divorcing parties *or* direct a lien or sale of the homestead to be set over unto the innocent party. *Harding* concerned a joint homestead of the divorced parties and it was not in the possession of the husband. We have different law and different facts here. We do not have a joint homestead involved in this case because both husband and wife received separate homes. Again, *Kerr*, cited by the majority, is inapplicable because that case was decided under law existing in 1952

whereunder the trial court, in deciding a divorce case, could assign the homestead to the innocent party. *Kerr* did not hold that a lien could be attached against the homestead of *one party*. We should decide this case on the facts of this particular case and my reading discloses that we have never had a case quite like this one in South Dakota. Here, the homestead and homestead proceeds belong exclusively to Michael Gunn. This Court, in my opinion, has not circumvented an inequity, it has spawned one. It is maddening to the art of logic to note the majority opinion cites to an equitable override, by a Minnesota court, over a homestead exemption and to read a footnote that the Minnesota legislature then revised the statute to exempt-out child support or maintenance arrears.

In all matters, I would reverse the trial court for its denial of Michael Gunn's motion to modify the judgment and decree of divorce and its decision to apply the proceeds of the sale of homestead to back alimony. Essentially, he is·down and out and she is on the alimony gravy train. He wheezes in the caboose.*

---

* Her brief quotes the Settled Record at 136–137: "Defendant [Michael Gunn] has the same serious health problems, including 'pulmonary vascular disease, manifested by shortness of breath, dyspnea, on exertion and chronic coughs'."