1999 SD 129

Carolyn S. JAMESON, Plaintiff and Appellant,

v.

G. Malcolm JAMESON, Defendant and Appellee.

No. 20506.

Supreme Court of South Dakota.

Considered on Briefs Jan. 14, 1999.

Issue No. 5 Reassigned Aug. 16, 1999.

Decided Sept. 29, 1999.

Lee R. Burd, Sioux Falls, South Dakota, Attorney for plaintiff and appellant.

John E. Burke, Sioux Falls, South Dakota, Attorney for defendant and appellee.

[¶ 1.] **AMUNDSON, Justice, delivers the majority opinion of the Court on Issues 1 and 2, holding that due to our determination of these issues, we find Issues 3 and 4 to be without merit.**

[¶ 2.] **KONENKAMP, Justice, delivers the majority opinion of the Court on Issue 5.**

AMUNDSON, Justice.

[¶ 3.] Carolyn Jameson appeals circuit court's decision (1) modifying alimony; (2) eliminating other support obligations; (3) awarding only partial interest on the judgment; (4) refusing to hold Dr. G. Malcom Jameson in contempt; and (5) failing to award attorney fees. We reverse and remand in part and affirm in part.

### FACTS

[¶ 4.] Carolyn and Malcom Jameson were divorced December 15, 1971, after twenty years of marriage. The parties entered into and signed a stipulation and agreement which was adopted in the divorce decree. That stipulation was approved by this Court in *Jameson v. Jameson*, 90 S.D. 179, 239 N.W.2d 5 (1976) (*Jameson I*). Since the time of divorce, the parties have been involved in prolonged litigation spanning nearly three decades which has resulted in three appeals to this Court and various appearances in the lower courts. *See id.;* 306 N.W.2d 240 (S.D.1981); and 332 N.W.2d 721 (S.D.1983).

[¶ 5.] The circumstances surrounding the divorce were that "defendant had become romantically involved with Kay Christensen whom he married shortly after the divorce decree was entered. Although it was plaintiff who filed for divorce, defendant was the one who desperately wanted out of the marriage." *Jameson I*, 90 S.D. at 182, 239 N.W.2d at 6. A continuing theme throughout the divorce agreement

was that Carolyn and the three children were to continue as if there had never been a divorce.[1] This Court noted that:

> Plaintiff, however, can scarcely be faulted in her insistence on a standard of living for herself and family that is commensurate with that she could have expected as the wife of a medical doctor. She had not precipitated the marital crisis in any way, and she sought only to salvage what she could from a very unhappy experience. She drove a hard bargain, but the defendant accepted it and it was incorporated into the divorce decree.

*Id.* at 7.

[¶ 6.] Since 1976 this divorce agreement has been interpreted by the courts a variety of times. The original divorce agreement called for a "baseline" support amount of $1,430, plus half of Dr. Jameson's earnings beyond his then current earnings. In 1979 this was interpreted as paying fifty percent of any monthly income over $2,300, tax free.[2]

[¶ 7.] The agreement was again interpreted by order dated June 9, 1980, when the trial court determined that Carolyn should receive one-eighth of Dr. Jameson's earnings beyond $3,050 per month, in addition to the baseline of $1,430 per month.[3] This formula has been in place since 1981.

[¶ 8.] In 1995 the parties again ended up in court over the amount of alimony due. In 1996 the trial court determined that since the parties have always used W–2 income as the income against which to determine "additional earnings" beyond $3,050, alimony was to be calculated based on Dr. Jameson's W–2 income. This decision was not appealed.

[¶ 9.] To bring us to the facts precipitating the present case, Dr. Jameson retired December 31, 1996, at the age of 70. In 1995 and 1996 Dr. Jameson failed to pay full support. In 1997, following retirement, Dr. Jameson unilaterally ceased paying all alimony. Dr. Jameson did this without filing any type of modification action with the trial court, as had been the past practice. In May 1997 Carolyn commenced a contempt action for failure to pay alimony and to determine and collect arrearages. Dr. Jameson subsequently filed a motion seeking to have alimony terminated due to a change in circumstances. Dr. Jameson claimed that he had retired; therefore, he no longer had any W–2 income and, consequently, he no longer owed alimony, even though there was no provision in the stipulation providing such relief.

---

1. For example, the divorce agreement stated:
   2.... If and when the children are grown up and self-supporting such benefits shall be made payable to plaintiff and defendant in equal shares.
   9. It is further agreed that this settlement is not intended to set a final and conclusive maximum nor to set a ceiling on the amount that shall be paid to plaintiff for her support and maintenance and support, maintenance and education of the children but the parties intend and agree that in case of illness or other unusual circumstance requiring money defendant shall be obligated to take care of plaintiff and the children just the same as if no divorce had occurred, and if and as defendant's earnings, investments and fortunes improve, plaintiff and her children shall have an equal share in defendant's additional earnings and income to the extent of at least one-half thereof....
   ... It is intended that the support provided to plaintiff and the children hereby shall be at a standard at least equal to what they presently enjoy....
   15. The agreements and covenants hereof shall continue for the life of plaintiff and the said children subject to termination only as about provided, [children's majority, plaintiff's remarriage] ... and shall be a charge upon defendant's estate in the event of his death.

2. Judge Christensen in a letter decision dated March 20, 1979, interpreted "the parties themselves, throughout the years have used a base of $2,300. It is a rule of construction that a court may accept the interpretation the parties themselves had adopted."

3. Since 1981, $3,050 has remained as the monthly figure for calculating what portions of Dr. Jameson's income was "additional earnings" entitling Carolyn to a 1/8th share.

[¶ 10.] The matter was heard by the trial court on July 22, 1997. A letter decision was issued December 23, 1997. Findings of fact and conclusions of law and an additional letter decision and order were issued February 26, 1998. Under the order, the trial court awarded Carolyn arrearages for alimony for the years 1995 and 1996 in the amount of $5,854.00, plus interest in the sum of $873.30. For 1997 the court found a change in circumstances and modified the alimony award. The court reduced alimony from approximately $2,400 per month to $1,400 per month and applied this figure retroactively to January 1, 1997. The court ordered that $1,400 per month be paid in alimony from and after January 1, 1998, as the total financial obligation of Dr. Jameson to Carolyn. The court also ordered Dr. Jameson to pay $1,110 as reimbursement for dental expenses incurred in 1997. The trial court denied the request to award attorney fees.

[¶ 11.] Carolyn appeals the modification, raising the following issues:

1. Whether the trial court's modification of alimony was proper.

2. Whether it was proper for the trial court to eliminate previous requirements that Dr. Jameson pay income taxes due on alimony, to pay taxes and insurance on Carolyn's home, and to pay Carolyn's medical, dental and hospital costs not covered by insurance, when those issues were not being raised or litigated.

3. Whether the trial court erred in failing to award full interest on the alimony arrearages due for 1997.

4. Whether Dr. Jameson should have been held in contempt for failure to pay the sums due pursuant to the orders of the court.

5. Whether the trial court should have required Dr. Jameson to contribute to Carolyn Jameson's attorney fees, tax and costs.

**DECISION**

[¶ 12.] **1. Whether trial court's modification of alimony was proper.**

[¶ 13.] SDCL 25–4–41 gives the trial court the discretion to modify alimony. We review the trial court's decision to modify an alimony award under the abuse of discretion standard. *Gunn v. Gunn,* 505 N.W.2d 772, 774 (S.D.1993). " 'An "abuse of discretion" is discretion exercised to an end or purpose not justified by, and clearly against, reasoning and evidence.' " *Id.* (quoting *Horr v. Horr,* 445 N.W.2d 26, 28 (S.D.1989)).

[¶ 14.] To justify a change in alimony payments there must be a change of circumstances. *Lampert v. Lampert,* 388 N.W.2d 899, 902 (S.D.1986). In a proceeding for modification of alimony, the burden of proving a change in circumstances sufficient to warrant modification is upon the party seeking modification. *Rousseau v. Gesinger,* 330 N.W.2d 522, 525 (S.D.1983).

[¶ 15.] Dr. Jameson asserts his circumstances have changed due to a reduction in income brought on by retirement. The trial court agreed, stating that "the defendant's situation [has] changed. He is now retired and his income is now less. This is a change."

[¶ 16.] While retirement can be a change in circumstances, it is not automatic. *See Gunn,* 505 N.W.2d at 774; *Wilson v. Wilson,* 399 N.W.2d 890, 891 (S.D.1987); *Lampert,* 388 N.W.2d at 903; *cf. Lambertz v. Lambertz,* 375 N.W.2d 645, 647 (S.D.1985) (finding that forced retirement from the Air Force, which reduced his income by approximately half, was a sufficient change in circumstances warranting a reduction in alimony). A decrease in earning, by itself, does not show a change of circumstances. *Wilson,* 399 N.W.2d at 891; *Lampert,* 388 N.W.2d at 903. For example, in *Lampert,* illness reduced obligor's income by forty-one percent. *Lampert,* 388 N.W.2d at 903. However, because the obligor spouse still had sufficient

funds to pay the alimony and because the dependent spouse continued to need the money to meet ordinary expenses, a reduction in alimony was denied. *Id.* In assessing change of circumstances, the trial court must consider a change in the necessities of the recipient and the financial ability of the obligor. *Olson v. Olson,* 1996 SD 90, ¶ 10, 552 N.W.2d 396, 399; *Gunn,* 505 N.W.2d at 774. The obligor spouse who claims inability to pay must produce complete and detailed evidence of his financial position showing an inability to pay. *Wilson,* 399 N.W.2d at 891; *Lampert,* 388 N.W.2d at 903. Carolyn argues the trial court abused its discretion because it only considered the reduction in income and failed to consider both the financial ability of obligor and the necessities of the recipient. We agree. Upon review, the record is devoid of proof that Dr. Jameson is financially unable to meet his alimony obligations. Furthermore, there was no showing that Carolyn's need for alimony had decreased; in fact, the evidence showed she was dependent upon the alimony. *See Wilson,* 399 N.W.2d at 891.

[¶ 17.] The record reveals that at trial Dr. Jameson testified he had an IRA valued at $700,000 from which he received $4,000 per month income, a stock portfolio valued at about $110,000, a residence valued at $180,000, and received social security benefits of $1,500 per month.

[¶ 18.] Carolyn, on the other hand, owned a house worth $120,000, which she had remortgaged for $63,701. She received social security of $465 per month and has a small income from a part-time business selling stationary cards. Furthermore, Carolyn had borrowed $3,000 from her insurance policy and charged $20,300 on credit cards in the past year due to Dr. Jameson's unilateral decision to stop making alimony payments. The trial court mentioned it was distressed with Carolyn's mismanagement of her finances. While there is no question that Carolyn's financial management has not been a picture of prudent financial investment, there is simply no authority that mismanagement is a basis on which to lower alimony.

[¶ 19.] Considering the tenor of the agreement between the parties, coupled with Dr. Jameson's ability to pay and Carolyn's continued need for support, the trial court abused its discretion in reducing alimony from approximately $2,400 per month to $1,400 per month. A more specific showing is required by the obligor spouse than merely stating retirement with its resultant decrease in income requires a reduction in alimony. *See Wilson,* 399 N.W.2d at 891; *Lampert,* 388 N.W.2d at 903.

[¶ 20.] We have previously acknowledged that at the time of the divorce agreement Dr. Jameson entered into a "bad bargain." *See Jameson I,* 90 S.D. at 184, 239 N.W.2d at 7. Once again, he seeks to be extricated from it. However, it has been repeatedly stated that it is not the role of courts in modification proceedings to relieve a party of his or her bad bargain. *Olson,* 1996 SD 90, ¶ 11, 552 N.W.2d at 399; *Whalen v. Whalen,* 490 N.W.2d 276, 283 (S.D.1992); *Jameson I,* 90 S.D. at 184, 239 N.W.2d at 7. This is not the time for the good doctor to be relieved from his acceptance of this agreement when he has failed to produce any evidence regarding his inability to pay the alimony. Under the present record, we find the trial court abused its discretion in reducing alimony to $1,400 per month based solely on the fact of retirement.

[¶ 21.] We reverse and remand Issue 1 to the trial court to enter judgment in accordance with this opinion.

[¶ 22.] As to Carolyn's remaining support obligations, the trial court limited Dr. Jameson's obligation to $1,400 per month and gratuitously did away with other support obligations. A review of the record discloses the remaining support obligations, as set out by the parties' agreement, were not raised at the hearing. In fact, the trial court acknowledged, "these points were never raised at the hearing."

It was error for the trial court to eliminate these support obligations without having these points raised or litigated by the parties.

[¶ 23.] We have considered Issues 2 and 3 and, due to our determinations on the above issues, we find them to be without merit.

### [¶ 24.] 4. Whether Dr. Jameson should have been held in contempt for failure to pay the sums due pursuant to the orders of the court.

[¶ 25.] Carolyn sought to hold Dr. Jameson in contempt for failure to pay alimony and for failure to obey a subpoena duces tecum. There was an order to show cause, followed by the hearing for modification. However, our review of the record discloses no ruling by the court on this motion. There were no proposed findings of facts filed on the contempt issue, nor were there any objections to the trial court's failure to rule on the contempt issue. We have held that no error is preserved for review on appeal when the court below fails to rule on a matter presented for decision. This Court has stated:

> If the trial court fails to decide or rule on a motion, nothing is presented for review in the appellate court. Where a ruling on a motion or objection is reserved by the court, the moving party must subsequently obtain a direct ruling in order to preserve the matter for appellate review. The burden of demanding a ruling rests upon the party desiring it. 'If a party permits the court to proceed to judgment without action upon his motion or objection, he will be held to have waived the right to have the motion or objection acted upon.'

*State v. Sickler*, 334 N.W.2d 677, 679 (S.D. 1983) (quoting *American Fed. Sav. & Loan Ass'n v. Kass*, 320 N.W.2d 800, 803 (S.D.1982)). Therefore, we conclude that Carolyn failed to preserve this issue at this time for appeal.

[¶ 26.] We affirm Issue 4.

[¶ 27.] MILLER, Chief Justice, SABERS, KONENKAMP, and GILBERTSON, Justices, concur on Issues 1 through 4.

KONENKAMP, Justice, writing for the majority on Issue 5.

### [¶ 28.] 5. Whether the trial court should have required Dr. Jameson to contribute to Carolyn Jameson's attorney fees, tax and costs.

[¶ 29.] Justice requires that Dr. Jameson pay the attorney fees for the litigation his actions created. The circuit court's decision denying Carolyn attorney fees is reversed. We award appellate fees, as well.

[¶ 30.] The award of attorney fees is authorized by SDCL 15–17–38. Whether a grant of such is warranted, however, is left to the sound discretion of the court. *Driscoll v. Driscoll*, 1997 SD 113, ¶ 10, 568 N.W.2d 771, 773; *Kappenman v. Kappenman*, 522 N.W.2d 199, 202 (S.D.1994). When making this determination, the court must first decide whether the fees are reasonable; then, using our standard factors, it must establish whether an award is necessary. *Billion v. Billion*, 1996 SD 101, ¶ 49, 553 N.W.2d 226, 236–37 (quoting *Fox v. Fox*, 467 N.W.2d 762, 768 (S.D.1991)). The elements a court should consider are "the property owned by each party, their relative incomes, whether the property of the parties is in fixed or liquid assets, and whether the actions of either party unreasonably increased the time spent on the case." *Kappenman*, 522 N.W.2d at 204 (citing *Kier v. Kier*, 454 N.W.2d 544 (S.D.1990)).

[¶ 31.] This Court looks to the totality of the circumstances when determining whether a grant of attorney fees is appropriate. Also, "[e]ach case must rest on its own facts and there is little to be gained by comparing the present fee with others which have been previously allowed." *Id.* (citing *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979); *Holforty v. Hol-*

*forty,* 272 N.W.2d 810 (S.D.1978)). We conclude that an abuse of discretion occurred when the circuit court denied Carolyn's request for attorney fees.

[¶ 32.] An inclusive examination of the facts shows that in the original divorce stipulation, Dr. Jameson agreed to pay all the following: the original mortgage on Carolyn's home, along with property taxes and insurance costs; taxes on Carolyn's alimony income; and any medical, dental or other hospital costs beyond what was covered by insurance. The record shows that in 1995 Dr. Jameson did not pay the full alimony due by apparently failing to calculate the correct amount according to the formula ordered by the trial court in 1980. The same is true for 1996. In 1997, Dr. Jameson ceased all payments. He also refused to pay Carolyn's dental bills.

[¶ 33.] At the time of the hearing, Carolyn owned a home, but had re-mortgaged it. She owed $63,701. She was forced to borrow $3,000 from a life insurance policy and had over $20,000 in credit card debt. Carolyn claimed these debts were caused, in part, by Dr. Jameson's incomplete fulfillment of his duties to her under the divorce agreement. Carolyn's only income is $465 per month from social security and a meager earning from her part-time business. Unquestionably, she is dependent on her alimony payments.

[¶ 34.] Applying the factors set out in *Kappenman,* Carolyn should be awarded attorney fees. First, Dr. Jameson owns a home worth substantially more than Carolyn's. His social security payments are three times that which Carolyn receives, he draws $4,000 per month from a retirement fund, and he has numerous stocks and investments. Much of Dr. Jameson's assets are liquid, whereas Carolyn has no significant assets. Although Carolyn obtained the services of new counsel who, at the outset, may have caused additional time to be spent on the case, this is clearly offset by Dr. Jameson's deliberate attempt to deprive Carolyn of what he agreed to give her in 1971. Therefore, it was clearly an abuse of discretion to deny Carolyn's request for attorney fees.

[¶ 35.] Finally, Carolyn has no means available to pay her attorney for this appeal. If Dr. Jameson had fulfilled his financial duties to Carolyn, she would not have needed to file either her motion in circuit court or her appeal in this one. Dr. Jameson implies in his brief that attorney fees are not warranted because they were not granted in past proceedings. This argument is without merit and unsupported in the law. *See Kappenman,* 522 N.W.2d at 204 (citations omitted). We award appellate attorney fees of $4,994.72.

[¶ 36.] MILLER, Chief Justice, SABERS and GILBERTSON, Justices, concur.

[¶ 37.] AMUNDSON, Justice, dissents.

AMUNDSON, Justice (dissenting).

[¶ 38.] In determining whether to award attorney fees, the trial court first considers if the fee is reasonable. *Driscoll,* 1997 SD 113, ¶ 22, 568 N.W.2d at 775. The judge then reviews:

(1) the amount and value of the property involved; (2) the intricacy and importance of the litigation; (3) the labor and time involved; (4) the skill required to draft pleadings and try the case; (5) the discovery procedures utilized; (6) the existence of complicated legal problems; (7) the time required; (8) whether briefs were required; and (9) whether an appeal to this court is involved.

*Id.* (quoting *Kappenman,* 522 N.W.2d at 204) (other citations omitted). The grant or denial of attorney fees in domestic relations cases rests in the sound discretion of the trial court and will not be reversed without a showing that the court abused its discretion. *Id.* ¶ 10, 522 N.W.2d 199.

[¶ 39.] The trial court reviewed the affidavit filed by Carolyn's counsel requesting attorney fees and determined that Carolyn's selection of new counsel added to the legal fees and, consequently, Dr. Jameson

should not be required to pay attorney fees. The court believed that "[t]his is no one's fault, it is not motivated by a malevolent spirit," and concluded each party was to pay their own attorney fees. The trial court was present for the proceedings and was aware of what was happening throughout the litigation. After reviewing the record, I cannot say the trial court abused its discretion. *See Billion*, 1996 SD 101, ¶ 50, 553 N.W.2d at 237.

[¶ 40.] Carolyn further petitioned on appeal for attorney fees, plus tax in the amount of $4,994.72, and costs incurred in the sum of $605.42. The petition is accompanied by a verified, itemized statement of costs incurred and legal services rendered as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). In determining the award of attorney fees, we consider factors such as the property owned by each party, their relative incomes, the liquidity of assets, and whether either party unreasonably increased the time spent on the case. *Storm v. Storm*, 400 N.W.2d 457, 458 (S.D.1987) (citations omitted). Considering the above, I would award Carolyn attorney fees of $2,497.36.