1996 SD 85

**Richard AGEE, Plaintiff and Appellant,**

v.

**Jewell AGEE, Defendant and Appellee.**

**No. 19049.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1996.

Decided July 2, 1996.

Terry L. Pechota of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for plaintiff and appellant.

Jon W. Dill, Rapid City, for defendant and appellee.

[¶ 1] **Justice Richard W. SABERS, delivers the majority opinion of the Court affirming trial court on Issues 1 and 2.**

[¶ 2] **Chief Justice Robert A. MILLER delivers the majority opinion of the Court with respect to Issue 3.**

[¶ 3] SABERS, Justice, writing the majority opinion with respect to Issues 1 and 2.

[¶ 4] Father appeals from an order which awards mother child support arrearages and orders father to reimburse mother for income tax dependency exemptions and medical expenses.

## FACTS

[¶ 5] Richard and Jewell were divorced October 21, 1983. At the time they had three minor children: Angela, Justin and Rebecca. They reached an agreement which provided Jewell would have custody of their three minor children, subject to Richard's

1. Richard alleged, and Jewell did not contest that from 1988 to 1993, Angela lived with Richard for 40 months and Jewell for 2 months; Justin lived with Richard for 47 months and Jewell for 20 months; Rebecca lived with Richard for 12 months and Jewell for 54 months.

2. In an order filed April 8, 1993, the trial court modified child support so that Richard's obli-

805

right to visitation. The attorneys on appeal did not represent the parties when the agreement was formed and Richard's attorney did not represent him in the trial court.

[¶ 6] The agreement provided Richard would pay $300 per month (later increasing to $400 per month) child support until the children reached the age of majority. It provided Richard would be entitled to declare two of the children as his dependents for income tax purposes, "assuming that he has remained current on child support." It also provided:

> [Richard] ... agrees to be responsible for the medical expenses of the minor children until such time as they reach ... majority, if [Jewell] through her employment is able to obtain medical insurance coverage on the children, [Richard] agrees to pay the deductibles as it pertains to the children. [Richard] does intend to acquire medical insurance and coverage for the children as soon as he can afford the same and will apprise [Jewell] when he has such coverage.

[¶ 7] In May 1986, the agreement was modified to set Richard's child support obligation at $150 per month. The trial court also entered a judgment against Richard for $1,555 in past child support.

[¶ 8] The children lived with Richard much of the time between 1988 and 1993.[1] Angela turned eighteen in 1992. While the children lived with him, Richard did not pay child support in full and did not move to modify child support or change the custody order until 1993.

[¶ 9] Richard moved for temporary custody of Justin and Rebecca on May 3, 1993.[2] Jewell moved for an order to show cause asserting Richard owed child support, had improperly claimed income tax exemptions for their children, and had not reimbursed her for the

gation was $354.84 per month for Justin and Jewell's obligation was $205 per month for Rebecca, resulting in monthly payments of $150 per month from Richard to Jewell.

The trial court also ordered that any medical costs not paid by insurance be paid 59% by Richard and 41% by Jewell.

children's medical expenses. She also sought 1993 attorney fees and her travel expenses to the hearing.

[¶ 10] The trial court found Richard owed $10,550 in child support and refused to retroactively modify his obligation.

[¶ 11] Richard claimed federal income tax dependency exemptions for two of the children from 1989 until 1992. The trial court refused to consider Richard's claim that he had physical custody of the children and ordered him to reimburse Jewell $2,263 for the dependency exemptions because he was not current on his child support obligation when he took them.

[¶ 12] Richard obtained medical insurance for the children in 1988 but did not notify Jewell, so both parties carried insurance. The trial court ordered Richard to reimburse Jewell for $16,323.49 she paid in insurance premiums and "all other care."

[¶ 13] Richard appeals.

### [¶ 14] 1. Whether Richard must reimburse Jewell for the entire cost of health insurance or only deductible amounts.

[¶ 15] The parties' agreement indicated Richard would pay medical expenses of the children. It also indicated that if Jewell obtained medical coverage through her employer, Richard would pay the deductibles for the children.

> In determining the proper interpretation of an agreement incorporated into a divorce decree, a court must seek to ascertain and give effect to the intention of the parties. In determining the intention of the parties, a court must look to the language that the parties used. A court can also consider the construction actually placed on the agreement by the parties as evidenced by their subsequent behavior.

*Kier v. Kier*, 454 N.W.2d 544, 547 (S.D.1990) (citations omitted).

[¶ 16] Richard claims the decision that he pay the full cost of medical care for the children conflicts with the terms of the agreement. The trial court found the agreement placed "an affirmative duty," which

Richard had not met, to contact Jewell when he obtained coverage for the children. Richard admitted he did not notify Jewell and that both parties carried insurance for a number of years due to this failure to communicate. He claims Jewell had an affirmative duty to inquire whether he had insurance before she purchased. This is contrary to the language of the agreement, which specifically states Richard "will apprise Jewell when he has . . . coverage."

[¶ 17] The intent of the agreement was to allow Richard to obtain insurance coverage for the children when he could afford it. This is evidenced by the fact that Jewell purchased insurance for the children until Richard contacted her. The trial court gave effect to the parties' intent and its order is affirmed.

### [¶ 18] 2. Whether Richard is entitled to credit on past-due child support for time the children resided with him.

[¶ 19] Since July 1, 1989, South Dakota law provided for an abatement of a portion of child support "if a child spends more than twenty-nine consecutive days with the non-custodial parent." SDCL 25–7–6.14; *Houser v. Houser*, 535 N.W.2d 882, 885 (S.D.1995). "Abatement essentially gives credit on future payments for extended visitations which have already occurred." *Houser*, 535 N.W.2d at 886.

[¶ 20] Richard had a duty to pay child support monthly. While the children lived with him, Richard did not pay child support in full. "Any unpaid support bec[omes] an unpaid judgment against [the payor spouse] as a matter of law, not subject to retroactive modification." *Id.* at 885 (citing SDCL 25–7–7.3; SDCL 25–7–7.4; *Kier*, 454 N.W.2d at 546). SDCL 25–7–7.3 provides: "Any past due support payments are not subject to modification by a court or administrative entity of this state[.]"

[¶ 21] Richard claims he is entitled to credit or abatement of his child support obligation for the months the children resid-

ed with him.[3] The trial court held Richard's support obligation became final when due and could not be modified. Richard claims he is entitled to abatement because his wife admitted he had actual custody of the children during the years 1988 to 1993 for substantially longer than twenty-nine consecutive days. In *Houser*, we held a trial court could not retroactively modify child support obligations by abatement even if visits of over twenty-nine days with the father were proved. *Houser*, 535 N.W.2d at 886. Richard should have moved the trial court for modification or abatement of his child support obligation or for a change in custody. He did not and we affirm the trial court's decision on this issue.[4]

[¶ 22] **3. Whether Richard was entitled to federal income tax exemptions.**

[¶ 23] The trial court held Richard was not entitled to dependency exemptions because he was not current on his child support when he took the exemptions. Richard claims he was entitled to dependency exemptions for the children because he claims he was the custodial parent. However, the agreement provided that Jewell was the custodial parent. " 'Custody' ... [is] determined by the terms of the most recent decree of divorce or separate maintenance[.]" T.Reg. § 1.152–4.

[¶ 24] Noncustodial parents are allowed to take the exemption if a qualified pre–1985 agreement exists and the noncustodial parent provides at least $600 per year in support. IRC § 152(e)(4)(A). However, this agreement places a condition on Richard's ability to claim the exemptions. Its terms are clear that Richard shall be entitled to declare two of the children as his dependents, "assuming that he has remained current on child support." The trial court found he was not current.

[¶ 25] Generally, the purpose of IRC § 152(e) is to provide certainty to the parties taking the exemption, and no "implied exceptions" are made when a party has not been in compliance with the divorce decree. *McClendon v. Comm'r*, 74 TC 1, 1980 WL 4557 (1980). However, in *Flatt v. Comm'r*, 52 TCM (CCH) 713, 1986 WL 21704 (1986), the parties had agreed that if the father maintained hospitalization insurance for the children and a life insurance policy naming the children as beneficiaries, he could claim the two children as dependents for income tax purposes. The tax court held it could determine whether the father had been in compliance with the divorce decree because:

> where a divorce agreement CONDITIONS the claim for dependency exemptions upon the performance of specific obligations, it is appropriate for [the tax court] to determine if, in fact, the party obligated to meet such conditions has fully complied.

*Flatt*, 52 TCM (CCH) 713.

[¶ 26] In the present dispute, the trial court found the divorce court's order "specifically provided that [Richard] was to pay child support before he could take any tax deductions." The trial court also determined Richard was in arrears on his child support. Therefore, the trial court did not err in determining Richard was not entitled to claim the exemptions. We affirm.

[¶ 27] Both parties have filed motions for attorney fees in proper form, but we decline both motions.

[¶ 28] MILLER, C.J., and AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur as to Issue 1.

[¶ 29] KONENKAMP and GILBERTSON, JJ., concur as to Issue 2.

[¶ 30] MILLER, C.J., and AMUNDSON, J., dissent as to Issue 2.

---

3. At the hearing, the parties appeared to agree that some type of offset would be available to Richard, but did not agree on the amount. Parties are without authority to modify or forgive child support arrearages without court approval. *Houser*, 535 N.W.2d at 885 (citing *Vander Woude v. Vander Woude*, 501 N.W.2d 361, 364 (S.D. 1993)).

4. Richard claims in his reply brief that South Dakota's automatic judgment statute violates his due process rights because it imposes a detriment without any opportunity for a pre-deprivation hearing. A party may not raise an issue for the first time on appeal, especially in a reply brief when the other party does not have the opportunity to answer. *Finck v. Northwest School Dist. No. 52–3*, 417 N.W.2d 875, 878 (S.D.1988).

[¶ 31] MILLER, Chief Justice (dissenting as to Issue 2 and writing the majority opinion with respect to Issue 3).

### Issue 2.

[¶ 32] **Whether Richard is entitled to credit on past-due child support for the time the children resided with him.**

[¶ 33] It is undisputed that the parties' children lived with Richard for extended periods of time from 1988 through 1993. In total, Angela lived with Richard over three years, Justin lived with Richard nearly four years, and Rebecca lived with Richard for a year.

[¶ 34] Richard did not seek abatement of his support obligation in court until Jewell sought to recoup past-due support payments. Citing the general rule that child support cannot be modified retroactively, the majority holds that he is not entitled to abatement of his past-due support obligation during the time from 1988 through 1993 that the children actually lived with him. The majority reiterates the rule of *Houser v. Houser*, 535 N.W.2d 882 (S.D.1995), where the Court held that abatement can only be used to decrease a *future* support obligation, not existing past-due payments. *Id.* at 886. I rejected this reasoning in my dissent to *Houser*, and I continue to oppose this inequitable and unnecessary restriction on abatement. "[A]batement is appropriate where the obligation has simply *accrued;* the obligation need not have been paid in full. Although forward-reaching abatement is certainly an option for a noncustodial parent, abatement of past-due payments is still proper." *Houser*, 535 N.W.2d at 888 (Miller, J., dissenting) (citations and quotations omitted).

[¶ 35] The majority would require Richard to pay full child support to Jewell *when he was raising the children in his own home.* Richard should not be penalized for assuming the custody and care of his children. Nor should Jewell receive a financial windfall as a result of relinquishing her custody rights.

[¶ 36] I do not believe South Dakota's child support laws require such absurd results. I contend Richard is entitled to abatement of his support obligation for periods exceeding twenty nine days when his children were residing with him. I would remand to the trial court for determination of the proper reduction in Richard's support obligation.

### Issue 3.

[¶ 37] **Whether Jewell was entitled to reimbursement for federal income taxes paid, because Richard claimed dependency exemptions to which she was allegedly entitled?**

[¶ 38] The original divorce decree granted physical custody of all three children to Jewell. However, pursuant to an agreement between the parties that was incorporated into the divorce decree, Richard could claim two of the children as dependents for federal income tax purposes. The agreement stated in relevant part:

> Pursuant to Section 152(c) or Section 152(e) of the Internal Revenue Code, or any other applicable section of the Internal Revenue Code or Internal Revenue Service regulation, as enacted or hereinafter amended, commencing with the year 1983, the Plaintiff [Richard] shall be entitled to declare both Angela Collette Agee and Rebecca Agee as his dependents for income tax purposes assuming that he has remained current on child support. The Defendant Jewell Agee shall claim Justin Adam Agee as her dependent for income tax purposes.

[¶ 39] From 1989 through 1992, Jewell claimed the parties' youngest daughter, Rebecca, as a dependent on her federal income tax form. Consequently, Jewell received an income exemption for Rebecca in each of these years. Jewell did not claim Angela or Justin as her dependents during these tax years. Neither of these children lived with her for six months or more in any of the years from 1989 through 1992.

[¶ 40] It is undisputed that Angela and Justin lived with Richard a majority of the time in 1989, 1990 and 1991.[5] Richard listed

---

5. On May 6, 1993, Richard filed an affidavit with the court detailing the children's living arrangements from 1988 through 1992. According to this affidavit, Angela lived with Richard from February 1988 until July 1991. Justin lived with Richard from January 1989 until August 1989,

Angela as a dependent on his tax form in each of these years. Justin lived with Richard for eight months in 1989 and for the entire year in 1990, 1991 and 1992. Richard claimed Justin as a dependent in each of these years.[6]

[¶ 41] Jewell emphasized to the trial court that the divorce decree grants Richard two dependency exemptions "assuming that he has remained current on child support." Jewell argued that Richard was not entitled to claim Justin or Angela as dependents for tax purposes, because he had not remained current on child support payments. Evidence in the record indicated that Richard had failed to satisfy a judgment entered in 1986 for past-due support payments of $1,550 owed to Jewell. Jewell also asserted that Richard was in arrears for support payments due from July 1987 through June 1993.

[¶ 42] Jewell's claim went beyond a general assertion that Richard was not entitled to dependency exemptions for Angela and Justin. Jewell further claimed that Richard should reimburse her for the additional taxes she paid from 1989 through 1992 when she did not claim Justin or Angela as dependents. According to Jewell, she paid an additional $2,263 in federal income tax due to her failure to take dependency exemptions for either of these children from 1989 through 1992. [¶ (a) ]

[¶ 43] The trial court agreed that, because Richard was not current on his child support payments, he was not entitled to the dependency exemptions for Justin or Angela. Furthermore, the court ordered Richard to reimburse Jewell for the additional $2,263 she paid in taxes from 1989 through 1992 as a result of not having claimed these children as dependents for tax purposes.

■ [¶ 44] The dissent on this question frames the issue as "Whether Richard was entitled to federal income tax exemptions." However, we respectfully submit that is not

the issue on appeal. The trial court did not stop at a simple determination that Richard is not entitled to the exemptions. The trial court further ruled that Richard must reimburse Jewell for $2,263 in purportedly excess tax payments. The issue Richard raises on appeal is whether the trial court erred in ordering him to reimburse Jewell for this amount. We are convinced the trial court did err.

[¶ 45] First, the parties' divorce agreement does not prevent Richard from claiming dependency exemptions for Angela and Justin. The agreement gave physical custody of the children to Jewell. Therefore, the provision allocating the exemptions between the parties is based on the premise that Jewell is the custodial parent. Indeed, in awarding two of the exemptions to Richard, the agreement specifically refers to federal statutes permitting allocation of the exemption to the *non-custodial parent. See* 26 U.S.C. § 152(c) and (e). Once Richard assumed actual physical custody of Angela and Justin, this provision of the agreement no longer applied. Therefore, in the absence of a specific provision that covered the situation, the trial court should have relied on the federal law which allocates the exemption to the custodial parent. *See* 26 U.S.C. § 152(e)(1).

■ [¶ 46] Second, Jewell has failed to show that she is legally entitled to the dependency exemptions for Justin and Angela. Generally, the income exemption for a dependent child goes to the divorced parent who has custody of the child for a greater portion of the calendar year. *Id.* It is undisputed that Justin and Angela were in Richard's custody more than half of each of the relevant calendar years. Consequently, under the general rule, Richard was entitled to the exemptions *and Jewell was not.* Although there are various exceptions to this rule, Jewell does not argue that any of these exceptions apply to make her eligible for the

---

when Justin returned to Jewell's home. In December 1989, Justin moved back to Richard's home and lived with Richard until January 28, 1993. Jewell does not dispute these statements.

**6.** Richard asserted that the parties' youngest child, Rebecca, lived with him for six months in 1992, from July through December. Richard

claimed Rebecca as a dependent on his 1992 tax form. Consequently, both Richard and Jewell claimed Rebecca as a dependent in 1992. Because neither party raises any issues concerning the proper allocation of Rebecca's dependency exemption, we need not address this question.

dependency exemptions. *See* 26 U.S.C. § 152(c), (e)(2), (e)(3), and (e)(4). Nor does the record indicate that any of these exceptions were satisfied. In essence, the trial court ordered Richard to reimburse Jewell for tax payments she was obligated to make. As we have previously observed: "Trial courts do not have the authority to award dependency exemptions for federal income taxes. Federal tax law mandates that, absent three exceptions not applicable here, the exemption goes to the custodial parent." *Voelker v. Voelker,* 520 N.W.2d 903, 909 (S.D. 1994) (citing 26 U.S.C. § 152(e)(1)).

[¶ 47] Third, even if Jewell was entitled to the dependency exemptions, the trial court erred in requiring Richard to reimburse Jewell for excess tax payments. Richard did not prevent Jewell from claiming any dependency exemptions to which she was legally entitled. Jewell was always free to file her income tax forms in the manner she saw fit. Additionally, any excess tax payments made by Jewell went to the federal government, not Richard. Jewell should seek redress from that entity, by filing amended tax returns or taking other appropriate action to receive a refund.

[¶ 48] We reverse and remand as to issue three, because the award of $2,263 to Jewell was improper.

[¶ 49] AMUNDSON, J., concurs.

[¶ 50] GILBERTSON, J., concurs as to Issue 3.

[¶ 51] KONENKAMP, J., concurs in part and dissents in part as to Issue 3.

[¶ 52] SABERS, J., dissents.

[¶ 53] KONENKAMP, Justice (concurring in part and dissenting in part).

[¶ 54] I fully concur with the majority on Issues 1 and 2. On Issue 3, I join the dissent, but only on the second point, that Jewell failed to establish she would have been legally entitled to claim the exemptions.