1996 SD 90

**Robert George OLSON, Plaintiff and Appellant,**

v.

**Judith Mary OLSON, Defendant and Appellee.**

No. 18964.

Supreme Court of South Dakota.

Considered on Briefs Sept. 14, 1995.

Decided July 17, 1996.

398

Ronald W. Banks of Banks, Johnson, Colbath and Kerr, Rapid City, for plaintiff and appellant.

Linda Lea M. Viken of Viken, Viken, Pechota, Leach and Dewell, Rapid City, for defendant and appellee.

LOVRIEN, Circuit Judge.

[¶ 1] This is an appeal by Robert Olson from an order of the trial court denying his petition to reduce his alimony payment and increasing that payment by $500 per month. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2] Bob and Judy Olson were married for approximately thirty years. For most of their married life, Bob, a dentist, was the primary financial provider. Judy raised their six children. By all accounts, Bob's practice was quite profitable for most of that time, and the Olson family enjoyed a commensurate standard of living. In 1986 Judy began a career in education and returned to work full-time. Since then she has finished her masters degree and has become involved in state politics.

[¶ 3] A divorce was granted to Judy in July 1992 on grounds of extreme cruelty. At that time, the parties entered into an agreement and stipulation, (agreement), which, among other things, obligated Bob to pay Judy alimony. The agreement stated:

Currently, HUSBAND shall pay ... alimony to WIFE in the sum of $2,100.00 per month for until the WIFE dies or remarries or HUSBAND dies, becomes disabled or unable to work. Said alimony shall increase to $2,600.00 when the prime line debt is paid by Plaintiff [Bob]. Provided, however, it is acknowledged by the parties that HUSBAND's income is currently reduced due to recent events and that the foregoing alimony provisions do not allow WIFE to maintain her normal standard of living. Therefore, the parties agree to reassess and renegotiate the alimony figure on or before June 30, 1993. If agreement cannot be reached, a court order may be sought.

[¶ 4] In October 1993, Bob asked the court to reduce his alimony payments. He alleged a reduction in his income and a substantial increase in Judy's income. Bob also claimed that Judy needed less support because of financial contributions made by her live-in companion. In response, Judy counterclaimed for an increase in alimony payments. She claimed she was entitled to an increase based on the provisions of the agreement and because her needs were not being met by the $2,100 per month she was receiving at that time.

[¶ 5] After trial on the issues, the court found, among other things, that Bob's income had not decreased since the divorce and that Bob voluntarily reduced his available income by increasing overhead costs in his business. In addition, the court found that although Judy's income had increased since the time of the divorce, and that "the necessities of the recipient have not changed [since the time of the divorce]," she still did not enjoy a standard of living commensurate with that prior to the parties' divorce, and was entitled to an increase in her alimony.

[¶ 6] Intermingled in the court's findings is an extensive discussion of Bob's personal and financial problems prior to the divorce,

Judy's relative innocence in creating the problems which caused their financial downfall, the propriety of the original property division, and the effect of the division of property on the parties since the divorce.

[¶ 7] Based on these findings the trial court raised Bob's alimony payment $500 per month. The court also decided that Bob's obligation would continue for the rest of his life. Bob was required to pay Judy's attorney's fees and costs. Bob claims the trial court erred as to the modification of the alimony amount, the modification of the duration of alimony payments, and the award of attorneys fees.

## ANALYSIS OF LAW

[¶ 8] At the outset it must be noted that this action was undertaken by both parties as one for *modification*. Judy could have asked the trial court to enforce the provisions of the agreement based on Bob's alleged failure to comply with the letter of the agreement as to the prime line debt. Instead, she asked the trial court to exercise its discretion to *modify* the agreement. Therefore, the trial court could act only within the confines of the discretion granted the courts in modification proceedings and could not predicate its decision on "enforcing" the agreement.[1]

[¶ 9] SDCL 25-4-41 gives the trial court granting a divorce the right to compel one party to pay alimony to the other. It also gives the court the discretion to "from time to time modify its orders in these respects." SDCL 25-4-41. This Court does not sit as the trier of fact in modification proceedings and we will not disturb the trial court's decision unless there has been an abuse of discretion. *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981). Our task in reviewing a trial court's decision is not to determine whether we would make the same decision, but whether, in view of the circumstances of the case and the applicable law,

the trial court could have reasonably reached the conclusion it did. *Havens v. Henning*, 418 N.W.2d 311, 312 (S.D.1988).

[¶ 10] Before a court may exercise its discretion to modify an alimony award, a change in those circumstances existing at the time of the original decree must have occurred. *Gunn v. Gunn*, 505 N.W.2d 772 (S.D.1993); *Klein v. Klein*, 500 N.W.2d 236 (S.D.1993); *Schwandt v. Schwandt*, 471 N.W.2d 176 (S.D.1991). The party asking for modification bears the burden of proving a change in circumstances has occurred—i.e. that there have been changes in the needs of the recipient and in the financial abilities of the obligor. *See, e.g., Horr v. Horr*, 445 N.W.2d 26, 28 (S.D.1989) (citations omitted). That discretion is not altered by the fact that the original judgment was based upon an agreement of the parties. *Paradeis v. Paradeis*, 461 N.W.2d 135 (S.D.1990); *Moller v. Moller*, 356 N.W.2d 909 (S.D.1984); *Myhre v. Myhre*, 296 N.W.2d 905 (S.D.1980).

[¶ 11] When the trial court considers evidence as to a change in circumstances, it must be careful to confine its review to changes occurring since the time of the divorce. The court is not to reflect on whether the decree was "equitable" when entered, but only whether the economic circumstances of the parties have changed since the award such that the original award is now either insufficient or excessive. The role of trial courts in modification proceedings is not to relieve a party of his or her bad bargain. *Whalen v. Whalen*, 490 N.W.2d 276 (S.D. 1992); *Pengra v. Pengra*, 429 N.W.2d 754 (S.D.1988); *Jameson v. Jameson*, 90 S.D. 179, 239 N.W.2d 5 (1976) "[T]he original decree is ... res judicata except in cases of changed circumstances subsequently arising, and proceedings for modification cannot be used to review the equities of the original

1. It is unclear whether the increase in alimony granted by the court was based on a modification of the agreement or an enforcement of the agreement. The trial court's memorandum decision states, "[t]his is an action for modification of alimony." The decision also states, "Judy was correct when she said ... we made a deal in '92,

it was a fair deal, I have an entitlement and the agreement should be enforced ... It will be." However, since Judy chose her remedy when she petitioned for modification, this Court shall presume that the trial court was acting to modify the agreement, despite the sometimes contradictory language in its decision.

**400**

decree." *Dougherty v. Dougherty*, 76 S.D. 318, 319, 77 N.W.2d 845, 848–49 (1956).[2]

[¶ 12] In assessing the obligor's ability to pay alimony, the court may evaluate the obligor's income in relation to his earning capacity to determine whether the obligor has attempted to avoid the alimony obligation by intentionally reducing his income. *Straub v. Straub*, 381 N.W.2d 260 (S.D.1986) (Fosheim, Chief Justice, concurring); *Herndon*, 305 N.W.2d at 918. In doing so, the court may consider whether the obligor has either acted with the primary goal of reducing his gross income or has artificially reduced the net income available after expenses through exaggerating personal expenses or inflating overhead costs of a business owned, at least in part, by the obligor.

[¶ 13] When assessing increases in the recipient's need for alimony, the trial court must consider both increases in the actual expenses of the recipient and changes in the recipient's non-support income. The trial court must balance the relative economic circumstances of both parties at the time of the request for modification against any increase in the recipient's earnings. The fact that the *recipient's income has increased* does not necessarily indicate that the recipient's long-term economic circumstances have been improved to such an extent that alimony is no longer required or should be reduced. *Saxvik v. Saxvik*, 1996 SD 18, 544 N.W.2d 177; *Moller*, 356 N.W.2d at 912. However, the court must refrain from speculating about the equities of the original

award, and confine its evaluation to increases in the recipient's needs since the divorce. *Dougherty*, 77 N.W.2d at 849.

[¶ 14] The trial court may also consider what effect, if any, the recipient's cohabitation with another person has had on the recipient's financial circumstances. *Paradeis*, 461 N.W.2d at 138; *Horr*, 445 N.W.2d at 28. When a cohabitant makes financial or other tangible contributions towards the living expenses of the alimony recipient, the recipient's ability to support herself may be increased, her needs may be reduced, and the alimony award may be reduced accordingly. *Id.*

[¶ 15] Conversely, when the *expenses* of the recipient are *increased* due to the recipient's voluntary support of persons the obligor is under no duty to support, the court may disregard those expenses to the extent they are claimed by the recipient as evidence of increased "need." *See, e.g.,* 27B CJS *Divorce* §§ 309, 313 (1986).

## DECISION

### Bob's ability to pay

[¶ 16] In determining Bob's ability to pay additional alimony, the trial court found Bob acted to intentionally reduce his income by inflating the overhead expenses associated with his dental practice. Since there is ample evidence on which the trial court could base this finding, the trial court did not abuse its discretion in making this finding.[3]

2. Judy urges this Court to ignore this precedent and allow consideration of the equities of an alimony award in situations where the award was based on the agreement of the parties, arguing that the wide discretion granted trial courts in child custody cases should be extended to alimony modification proceedings. In *Kolb v. Kolb*, 324 N.W.2d 279 (S.D.1982), this Court held that the trial court could hear all evidence relative to custody without the party seeking modification having to show a change in circumstances since the original award. The *Kolb* holding was rooted in the fact that when custody was originally settled by agreement, the court had not decided the issue of custody in light of the best interests of the child, and so such considerations would not be res judicata. The basis for allowing the court to revisit all aspects of a custody case is that the court does so on behalf of the child whose interests were not represented in the

original agreement. When the parties agree to an alimony award and the court incorporates that agreement, no party has been left unrepresented. Therefore, the alimony is res judicata as to the parties to the divorce.

3. Bob's gross income from his dental practice increased from $229,718 in 1992 to $259,555 in 1993. His total expenses increased from $152,014 in 1992 to $202,318 in 1993, a percentage increase of 12 percent from 1992 to 1993. That increase includes increased deduction for travel (nearly double), increased wages (up $12,000 in 1993 over 1992), a $6,000 increase in other expenses, and a $9,000 increase in depreciation over 1992, totalling some $31,000 in these categories alone. The court found many increases were attributable to Bob's acting to increase overhead and were not legitimately related to

The trial court also could properly conclude, as it did, that Bob has access to the income he needs to pay an increase of $500 a month to Judy. We affirm the trial court's determination of this issue.

### Judy's need for additional alimony

[¶ 17] Normally, the propriety of the original alimony award is considered res judicata and the award is deemed to have provided adequate support for the recipient spouse at the time it was made. That is why our decisions require a recipient spouse to show a change in circumstances sufficient to prove a need for additional support before increased support can be awarded. In deciding a motion for increase in alimony, the trial court would normally begin its analysis with an amount of support considered adequate at the time of the divorce. The trial court can then evaluate a claim of increased need against the level of income originally determined to be adequate support for the recipient spouse.

[¶ 18] In this case however, the agreement of the parties had the effect of giving the trial court a base number for what amount of support was *inadequate* at the time of the divorce. Here, the *inadequacy* of the original alimony award is res judicata. Accordingly, Judy is not required to show a change of circumstances in order for the trial court to award an increase. In fact, the trial court could award Judy an increase in alimony based solely on the fact that the original alimony award was inadequate unless Bob can prove a change in circumstances sufficient to establish that the original alimony award is now adequate or excessive.[4]

[¶ 19] The trial court was presented with conflicting evidence concerning whether, since the divorce, Judy's need for support

business needs, and the reduction in his net income of some $20,000 was an artificially produced result of his manipulations.

4. The agreement of the parties at the time of the divorce provided that support of either $2,100 or $2,600 per month was inadequate at that time to allow Judy to maintain her customary lifestyle. Thus even a $500 a month increase would still be inadequate support under the terms of this agreement.

had increased or decreased and whether Judy's need for support was being met given changes in her income. After considering this evidence, the trial court found the parties recognized that the terms of the agreement provided for "inadequate" support when made. The trial court also found "the necessities of the recipient, as determined by them at the time of the agreed upon alimony sum, have not changed nor have they been satisfied. . . ." The court concluded that:

> Although Defendant's income has improved through her own industry, she has not yet achieved that standard of living she enjoyed before the divorce. She is in need of increased assistance from [Bob].[5]

[¶ 20] Since the trial court's findings and conclusions are supported by the evidence, its award of a $500 a month increase in alimony was not an abuse of discretion.

### Evidence of Judy's cohabitation

[¶ 21] The trial court's determination that Judy's cohabitation had a de minimis effect upon her needs was not clearly erroneous. The trial court was correct in limiting inquiry to any actual, current effects on Judy's financial situation at the time of the modification proceeding. We see no error in the trial court ruling that future contributions by a cohabitant are speculative.

[¶ 22] Further, although it would be permissible for the court to consider any tangible increases in Judy's expenses arising from her companion's residing with her, such as increases in grocery or phone bills, the value of intangibles which do not actually increase Judy's living expenses, such as the fair rental value of her home, are irrelevant. The trial court's determination of this issue is affirmed.

5. Judy testified she has foregone many of the amenities associated with her former lifestyle since the divorce. She testified she has cut her clothing purchases in half, travels less, has reduced her long distance communication with the couple's children substantially, and gives less to charitable and other organizations than she did prior to the divorce. "Need" is a relative term. While these items might be extravagances at one level of income, they are not out of line with the admitted standard of living of the parties prior to the divorce.

**Duration of alimony obligation**

[¶ 23] The original judgment and decree of divorce required Bob to continue to pay alimony to Judy "until [Judy] dies or remarries or [Bob] dies, becomes disabled, or unable to work." The trial court changed the duration for which Bob must pay alimony to Judy by ordering him to pay "for life or until [Judy] dies or remarries, or Bob dies."

[¶ 24] The trial court, in effect, eliminated language ending alimony if Bob becomes disabled or unable to work. As a practicable matter this change makes no real difference. A disability or inability to work is always a change of circumstances the trial court can consider in decreasing or ending a support obligation. If Bob were to become disabled or unable to work, he would still have the burden of establishing the existence and extent of his disability regardless of whether the original or the new language was in effect. Altering the language as to the duration of support does not, in this case, alter the basic rights or obligations of the parties and does not therefore constitute an abuse of the trial court's discretion.

## AWARD OF ATTORNEY FEES

[¶ 25] The trial court did not abuse its discretion in awarding Judy $4,384.42 in attorney fees. We have considered Judy's request for attorney fees on appeal, together with an itemized statement of expenses incurred on appeal. *See Tesch v. Tesch*, 399 N.W.2d 880, 885 (S.D.1987). We award to Judy attorney fees of $1,500.

[¶ 26] We have considered the other issues raised by counsel and have found them to be without merit.

[¶ 27] Affirmed.

[¶ 28] MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ., concur.

[¶ 29] LOVRIEN, Circuit Judge, for KONENKAMP, J., disqualified.

