2000 SD 60

**Scott J. JACOBSON, Plaintiff and Appellant,**

v.

**Nancy J. JACOBSON, Defendant and Appellee.**

No. 21088.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 2000.

Decided May 3, 2000.

John J. Delaney of Delaney & Sumner, Rapid City, for plaintiff and appellant.

James L. Waggoner, Rapid City, for defendant and appellee.

MILLER, Chief Justice

[¶ 1.] This is an appeal from the trial court's modification of a provision in a divorce decree which allocated the federal income tax dependent exemptions. We affirm in part and reverse in part.

## FACTS

[¶ 2.] Scott Jacobson and Nancy Jacobson were married in August 1985, and two children were born to the marriage. They were divorced in May 1996. The divorce decree incorporated a "Stipulation, Property Settlement and Child Custody Agreement" [Stipulation] entered into between the parties, which provided in salient part:

IV. The parties agree that [Scott] shall pay child support in accordance with the guidelines of the state of South Dakota of Eight Hundred Sixty-eight Dollars ($868) per month. Day care or similar costs incurred as a result of [Nancy's] employment will be shared by the parties ([Scott] shall pay 70% and [Nancy] shall pay 30% at this time) and paid separately from the child

support obligation.... Uncovered medical expenses and all costs of medical insurance shall be shared equally by the parties.... In any year in which the child support paid by [Scott] to [Nancy] equals or exceeds Four Thousand Two Hundred Dollars ($4,200), the exemption for the Internal Revenue Service shall pass to [Scott] and [Nancy] shall execute any documents or papers necessary to accomplish that end.

[¶ 3.] At the time the Stipulation was signed, Nancy had just been notified that her teaching contract would be reduced to a part-time position for the 1996–1997 school year.[1] She later testified that she agreed to permit Scott's claiming the children's income tax exemptions because she "just thought that it was fair that Scott get them. At the time, they would have been worth more to him for his income than they would have been to me for what my income was going to be."

[¶ 4.] As a result of Nancy securing a full-time teaching contract for the 1998–1999 school year, Scott suggested that child support be reviewed. Nancy agreed and filed a Petition for Modification of Child Support, claiming that circumstances had changed. In addition to Nancy resuming full-time employment, both parties had re-married. Further, the state child support guidelines and the federal tax laws concerning dependency exemptions and child care credits had changed.[2] She and Scott agreed to present the case to a referee in order to "keep the lawyers out of it."

[¶ 5.] A hearing was held before the referee on December 9, 1998. A transcript of the hearing is not contained in the file, but it appears that the issue of whether the dependent exemptions could be modified was not addressed.

[¶ 6.] Apparently the referee assumed Nancy was entitled to the federal income tax dependent exemptions, despite the contrary provision in the Stipulation. He additionally assumed that she was in fact claiming the exemptions on her tax returns. Under the presumption that he had no jurisdiction to make a recommendation about who was entitled to claim such exemptions, the referee treated them only as a factor to consider in deviating from the child support guidelines. He ultimately recommended that the amount of child support be increased (pursuant to applicable child support guidelines), and that the payment of the children's medical expenses not covered by insurance be reallocated between the parties.

[¶ 7.] Neither party objected to the referee's report. The trial court adopted the report and entered a child support order accordingly. Two days later, Nancy filed a motion to modify the divorce decree and remove the provision concerning which party is entitled to the dependent exemptions. On June 23, 1999, the court granted the motion, finding that circumstances had changed since the entry of the divorce decree. Specifically, it noted that both parties had re-married and each parties' new spouse was employed full time, Nancy had secured full-time employment, the statute (SDCL ch. 25–7) pertaining to child support had been modified in 1997, and federal tax laws relating to dependent exemptions and child care credits had changed. The court further found that the value of the dependent exemptions was almost equal to both parties, but were Nancy allowed to claim the children as dependents for income tax purposes, the children would be more greatly benefited.

---

1. She taught part-time for the 1996–97 and 1997–98 school years, before regaining a full-time teaching position for the 1998–1999 year.

2. Although Nancy presented at least three circumstances that had changed since the entry of the divorce decree, under SDCL 25–7–6.13, she is not required to present any change of circumstances in order to modify the original support order, since it was entered prior to July 1, 1997.

Based on these and other findings, the court concluded in pertinent part:

5. The issue of what party is entitled to claim a child as a dependent for income tax purposes is part of child support and the child support equation and in fact, the amount of child support and which party will claim the children as dependents for federal income tax purposes are absolutely interlocking considerations. *Sarver v. Dathe,* 439 N.W.2d 548 (S.D.1989).

6. This Court must defer to federal law as to which parent is entitled to claim the children as dependents for income tax purposes as that matter has been determined by federal law.

7. The portion of the Stipulation, Property Settlement and Child Custody Agreement requiring the custodial parent to sign a written statement disclaiming her right to claim the children as dependents for income tax purposes for a specified year and allowing the noncustodial parent to attach that statement to his tax return for that particular year is removed and stricken from the Decree of Divorce.

8. Commencing with calendar year 1998, which party shall be entitled to claim the children of the parties hereto as dependents for income tax purposes shall be determined in accordance with applicable federal law and regulations.

[¶ 8.] Scott now appeals, raising essentially one issue: Did the trial court abuse its discretion by modifying the provision in the divorce decree which allocated the federal income tax dependent exemptions? Nancy seeks attorney fees on appeal.

## STANDARD OF REVIEW

[¶ 9.] We will not tamper with modification decisions unless the circuit court has acted in a manner which amounts to an abuse of its discretion; "a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence."

Deference must also be accorded a circuit court's findings due to its opportunity to view the witnesses and judge the credibility of their testimony.

*State, ex rel. Dryden v. Dryden,* 409 N.W.2d 648, 651–52 (S.D.1987) (citations omitted).

## DECISION

[¶ 10.] **1. The trial court did not abuse its discretion in modifying a provision in the divorce decree which allocated the federal income tax dependent exemptions.**

*a. Modification of the dependent exemption allocation*

[¶ 11.] Scott contends that the dependent exemption provision in the divorce decree cannot be stricken or otherwise modified by the court, because that issue is controlled by federal law. Citing *Jameson v. Jameson,* 306 N.W.2d 240 (S.D.1981) *(Jameson II),* he further argues that even though a court in this state does not have authority to allocate dependency exemptions, it has a duty to enforce those obligations the parties undertook willingly. Thus, Scott asserts that even though the court could not allocate the exemptions initially, it can enforce the exemption provision in the original decree. He argues that since Nancy agreed in the Stipulation that he could claim the children as dependents in any year he paid more than $4,200 in child support (which he has done every year since the divorce), the provision must be upheld and cannot now be stricken from the decree. We disagree.

[¶ 12.] "In an action for divorce, the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." SDCL 25-4-45. "Circuit courts have continuing jurisdiction to modify child support obligations and are statutorily infused with broad powers to implement

modifications 'from time to time,' SDCL 25–4–41, and 'as may seem necessary or proper.' SDCL 25–4–45." *Dryden,* 409 N.W.2d at 651 (citations omitted). A child support agreement may be modified even though it was originally based on a stipulation between the parties. *Jameson II,* 306 N.W.2d at 242; *State ex rel. Larsgaard v. Larsgaard,* 298 N.W.2d 381, 383 (S.D. 1980). "The parties' agreement cannot deprive the courts of their power to modify support obligations." *McGee v. McGee,* 415 N.W.2d 812, 813 (S.D.1987). In addition, dependent exemptions and child support are "absolutely interlocking considerations," *Sarver v. Dathe,* 439 N.W.2d 548, 551 (S.D.1989), and "the tax exemption is part of the child support issue." *Id.* at 554 (Sabers, J., concurring specially).[3]

■ [¶ 13.] On the other hand, federal law mandates that absent three exceptions, the dependent exemption goes to the custodial parent. IRC § 152(e).[4] Accordingly-

3. Other states also consider dependent exemptions part of the child support issue. Under statutory authority recognizing the intimate link between child support orders and dependent exemptions, Colorado courts in *In re Marriage of Ford,* 851 P.2d 295, 298 (Colo. Ct.App.1993), and *In re Marriage of Larsen,* 805 P.2d 1195, 1197 (Colo.Ct.App.1991), have modified such exemptions as part of a child support order. *See also, Hutchinson v. Hutchinson,* 85 Ohio App.3d 173, 619 N.E.2d 466, 468 (Ohio Ct.App.1993) (holding that whenever a court modifies, reviews or otherwise reconsiders a child support order, it may reconsider the dependent exemptions); and *McKenzie v. Jahnke,* 432 N.W.2d 556, 558 (N.D.1988)(Levine, J. concurring specially) (stating that because dependent exemptions are so clearly aligned with child support, as opposed to property division, they may be modified by trial court).

4. IRC § 152(e) provides in pertinent part:

Support test in case of child of divorced parents, etc.—
(1) Custodial parent gets exemption.—Except as otherwise provided in this subsection, if—
(A) a child ... receives over half of his support during the calendar year from his parents,
....
(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,
such child shall be treated ... as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the "custodial parent").
(2) Exception where custodial parent releases claim to exemption for the year.— A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if—

(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and
(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.
For purposes of this subsection, the term "noncustodial parent" means the parent who is not the custodial parent.
(3) Exception for multiple-support agreement.—This subsection shall not apply in any case where over half of the support of the child is treated as having been received from a taxpayer under the provisions of subsection (c).
(4) Exception for certain pre–1985 instruments.—
(A) In general.—A child of parents described in paragraph (1) shall be treated as having received over half his support during a calendar year from the noncustodial parent if—
(i) a qualified pre–1985 instrument between the parents applicable to the taxable year beginning in such calendar year provides that the noncustodial parent shall be entitled to any deduction allowable under section 151 for such child, and
(ii) the noncustodial parent provides at least $600 for the support of such child during such calendar year.
....
(B) Qualified pre–1985 instrument.—For purposes of this paragraph, the term "qualified pre–1985 instrument" means any decree of divorce or separate maintenance or written agreement—
(i) which is executed before January 1, 1985,
(ii) which on such date contains the provision described in subparagraph (A)(i), and

ly, trial courts have no authority to award dependent exemptions for federal income tax purposes. *Alexander v. Hamilton,* 525 N.W.2d 41, 45 (S.D.1994); *Voelker v. Voelker,* 520 N.W.2d 903, 909 (S.D.1994); *Earley v. Earley,* 484 N.W.2d 125, 128 (S.D.1992), *cert. denied* 506 U.S. 895, 113 S.Ct. 272, 121 L.Ed.2d 200 (1992); *Sarver,* 439 N.W.2d at 551; *Brandriet v. Larsen,* 442 N.W.2d 455, 460 (S.D.1989); and *Dryden,* 409 N.W.2d at 652 n.2.

■■■ [¶ 14.] Further, we have held that although a court cannot impose an obligation such as college education expenses upon the parties to a divorce, such an obligation is valid and enforceable if stipulated between the parties. *Jameson II,* 306 N.W.2d at 244. Even though a party may subsequently find harsh the terms of an agreement to which he earlier stipulated, such a revelation does not constitute changed circumstances so as to warrant a modification. *Jameson v. Jameson,* 90 S.D. 179, 184, 239 N.W.2d 5, 7, (S.D.1976) *(Jameson I).*[5]

[¶ 15.] Both *Jameson II* and IRC § 152(e) place similar restrictions upon our courts: Courts cannot impose certain obligations upon the parties as part of a divorce (such as college education expenses or the allocation of dependent exemptions), but the parties can impose such obligations on themselves.

■ [¶ 16.] Are income tax dependent exemptions a matter of federal law outside state court jurisdiction, or are they merely one component of an overall divorce decree that can be reviewed and modified by our

courts at any time? Although *Jameson II* and IRC § 152(e) limit the initiative of the judiciary, neither was intended to bind the hands of judges. They should not be interpreted in such a manner. Instead, a court's broad powers to implement modifications must be reconciled with the apparent limitations of *Jameson II* and IRC § 152(e) as follows: A court can not impose certain arrangements on the parties as a condition of granting a divorce. However, once the parties have stipulated to a provision and incorporated it into their divorce agreement, the court has authority to approve or reject the agreement. If it approves, it also has the authority to later modify a provision as part of the overall modification of the decree. This holding finds support in *Connolly v. Connolly,* 270 N.W.2d 44, 47 (S.D.1978), where, regarding the modifiability of alimony orders, we stated:

> We conclude that when read together [our alimony statutes] contemplate that a husband's duty of support may be the subject of a valid agreement entered into between the parties to a marriage subsequent to the marriage and in contemplation of separation or divorce, but that in the event of a divorce the trial court has the ultimate authority to approve or reject the agreement and, if it approves the agreement, to later modify the provisions for support.

*Accord Shoop v. Shoop,* 58 S.D. 593, 600, 237 N.W. 904, 907 (S.D.1931) (surmising that court would be deprived of statutorily prescribed jurisdiction in holding that be-

(iii) which is not modified on or after such date in a modification which expressly provides that this paragraph shall not apply to such decree or agreement.

5. *Jameson I,* 90 S.D. at 184, 239 N.W.2d at 7, is frequently cited for the proposition that it is not the function of courts to relieve parties of their "bad bargain." *Weekley v. Weekley,* 1999 SD 162, ¶ 19, 604 N.W.2d 19, 24; *Jameson v. Jameson,* 1999 SD 129, ¶ 20, 600 N.W.2d 577, 582 *(Jameson IV), Olson v. Olson,* 1996 SD 90, ¶ 11, 552 N.W.2d 396, 399; *Whalen v. Whalen,* 490 N.W.2d 276, 283 (S.D.

1992). In fact, we upheld the trial court's modification of Mr. Jameson's "bad bargain" on one occasion. *See Jameson II,* 306 N.W.2d at 242–43 ("We cannot say that the trial court abused its discretion in the adjustments entered or in refusing further modifications."). Thus, when a party sufficiently satisfies the trial court that changed circumstances warrant modification of the decree's original terms, we will uphold such a modification absent an abuse of discretion, irrespective of our opinion about the wisdom of the agreement's original terms.

cause the court incorporated provision from parties' stipulated agreement into divorce decree, the decree is not subject to modification).

[¶ 17.] Our position in no way infringes upon the federal mandate in IRC § 152(e)[6] and is harmonious with other decisions concerning dependent exemptions. A review of our pertinent cases reveals that where there is no exemption provision in the divorce agreement, we have not allowed the trial court to proactively allocate the dependent exemption. *See Sarver*, 439 N.W.2d at 551; *Brandriet*, 442 N.W.2d at 460; *Voelker*, 520 N.W.2d at 909. However, in the three cases where there has been an initial stipulated allocation of the exemption between the parties, *Dryden, Earley*, and *Struck v. Struck*, 417 N.W.2d 382 (S.D.1987), we have both allowed and disallowed modification. In *Dryden*, we allowed modification in part because the father had not timely made support payments. 409 N.W.2d at 652. In *Earley*, the trial court first modified the stipulated exemption provision without objection, but subsequently refused to do so a second time. 484 N.W.2d at 126. Although the first modification was not appealed, we affirmed the court's subsequent refusal to modify, citing IRC § 152(e). *Id.* at 129. In both *Earley* and in *Struck*, we determined that the agreements qualified as "pre–1985 instrument" exceptions under IRC § 152(e), therefore the stipulated exemption provisions were valid. *Earley*, 484 N.W.2d at 129; *Struck*, 417 N.W.2d at 383. Neither case involved the "written waiver" exception Scott is presenting here.[7]

[¶ 18.] Applying our analysis to the instant case results in the conclusion that the trial court did not err in modifying the dependent exemption provision of Scott and Nancy's divorce decree. The court did not have authority to proactively allocate the dependent exemptions, but Scott and Nancy did. Once allocated, the dependent exemption provision was subject to modification by the court as a component of the divorce decree.

[¶ 19.] A review of the trial court's reasons for striking the dependent exemption provision does not show an abuse of discretion. Therefore, the modification of the provision in the divorce decree pertaining to allocation of dependent exemptions is affirmed.

*b. Retroactive modification of the dependent exemption provision*

[¶ 20.] Scott alternatively argues that if the trial court is allowed to modify the stipulated allocation of dependent exemptions, then it erred by retroactively applying its decision. He makes this contention because the trial court initially made its decision effective for the 1999 tax year, but subsequently amended the decision to make it effective for the 1998 tax year. Scott claims this retroactive application violates SDCL 25–7–7.3 and is controlled by our previous decisions on the subject.

[¶ 21.] SDCL 25–7–7.3 states:

Any past due support payments are not subject to modification by a court or administrative entity of this state, except those accruing in any period in which there is pending a petition for modification of the support obligation, but only from the date that notice of hearing of the petition has been given to the obligee, the obligor, and any other

---

6. In fact, our decision in the present case is consistent with the spirit of the federal law, which by default gives the exemptions to the custodial parent, presumably because that parent provides more than half of the child's support. *See* IRC § 152(e)(1); *Brandriet*, 442 N.W.2d at 457.

7. The two remaining cases are inapposite to our analysis. In *Alexander* we found § 152(e) to be inapplicable altogether. 525 N.W.2d at 45. In *Agee v. Agee*, 1996 SD 85, ¶ 45, 551 N.W.2d 804, 809, we found that the noncustodial parent had become the custodial parent since the entry of the divorce decree, therefore he was entitled to the exemption under the general rule.

parties having an interest in such matter.

[¶ 22.] We interpreted this statute to mean that "[o]nly those payments which accrue while a petition for modification is pending may now be modified, but only from the date that notice of hearing on the petition has been given to the interested parties." *Kier v. Kier,* 454 N.W.2d 544, 546 (S.D.1990); *see also, Earley,* 484 N.W.2d at 129; *Vellinga v. Vellinga,* 442 N.W.2d 472, 474 (S.D.1989).

[¶ 23.] Here, notice of the motion which eventually resulted in the modification of the dependent exemption was served on Scott on February 5, 1999. Therefore, the court erred by making the modification effective for tax year 1998. We reverse this issue, and direct the court to enter an amended order making its modification effective for the 1999 tax year.

### c. Trial court's consideration of changed circumstances

[¶ 24.] Scott also contends the trial court erred in finding that changed circumstances warranted modification of the divorce decree. He claims that the circumstances presented by Nancy were considered by the referee at the child support hearing, and that there were no additional changes between the filing of referee's decision in February 1999 and the filing of the motion to modify the divorce decree two days later.

[¶ 25.] Scott's position overlooks the fact that the referee understandably presumed he had no jurisdiction to rule on the dependent exemption issue. Further, the language of his report indicates he assumed that Nancy was already claiming the exemptions. Under these circumstances, it would have been either futile or unwarranted for Nancy to object to the referee's findings. In light of these facts, it cannot be said the trial court erred in finding that a change of circumstances warranted the modification of the original dependent exemption allocation in the divorce decree.

### d. Trial court's consideration of other factors

[¶ 26.] Scott's final claim is that the trial court erred in modifying the exemption provision without considering the amount of the child support obligation or any other factors determining such obligation. He relies on *Sarver,* 439 N.W.2d at 551, wherein we stated that consideration of dependent exemptions was a factor in considering the ability to pay child support. This argument is also flawed.

[¶ 27.] In essence, what happened in this case is that the cart was put before the horse. The referee's decision which modified the amount of Scott's child support obligation assumed that Nancy was entitled to and currently claiming the exemptions. Operating under this assumption, the referee took all the pertinent factors into consideration at the time he revised the child support obligation. Therefore, when the trial court modified the dependent exemption provision in the decree, it simply brought the decree into alignment with the referee's assumption concerning the exemptions. Since all the other factors related to determining a child support award had just been considered by the referee, it was unnecessary for the court to re-consider them. Thus, the trial court did not err by failing to consider all pertinent factors in conjunction with modifying the divorce decree.

### [¶ 28.] 2. Attorney fees on appeal.

[¶ 29.] Nancy filed a motion for attorney fees on appeal supported by a verified, itemized statement of legal services rendered. *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985).

[¶ 30.] SDCL 15–17–38 provides that attorney fees may be granted in cases of domestic relations and support. Proceedings which are sufficiently intertwined with the domestic relation case do not prohibit such an award being made. *See Estate of Thomas v. Shef-*

*field,* 511 N.W.2d 841, 844 (S.D.1994); *Finck v. Finck,* 354 N.W.2d 198, 202 (S.D.1984). Attorney fees on appeal may be granted, "regardless of the success of the party requesting them, unless that party has proceeded in bad faith, or has brought a frivolous or unjustified action." *Peterson v. Peterson,* 434 N.W.2d 732, 738 (S.D.1989).

In determining whether fees for the appeal are proper, we must "consider the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case." *Hautala v. Hautala,* 417 N.W.2d 879, 883 (S.D.1988); *Peterson,* 434 N.W.2d at 738.

*Alexander,* 525 N.W.2d at 48.

[¶ 31.] Applying these factors to this case, we hereby grant Nancy's motion for attorney fees on appeal.

[¶ 32.] Affirmed in part and reversed in part.

[¶ 33.] KONENKAMP and GILBERTSON, Justices, concur.

[¶ 34.] SABERS and AMUNDSON, Justices, concur in part and dissent in part.

SABERS, Justice (dissenting in part and concurring in part).

[¶ 35.] The trial court erred in modifying a bargained-for, court-approved Stipulation which allocated federal income tax dependent exemptions between the parties. Therefore, the trial court erred in modifying the Stipulation (Issue 1(a)) and in retroactively applying its decision to modify the Stipulation in the 1998 tax year (Issue 1(b)). Therefore, I dissent to Issue 1(a), but concur in Issue 1(b).

[¶ 36.] **The trial court erred in modifying the parties' agreement to allocate the federal income tax dependent exemptions, and abused its discretion in doing so.**

[¶ 37.] Scott and Nancy Jacobson were divorced in May of 1996. During the divorce proceedings, the parties agreed and signed a "Stipulation, Property Settlement and Child Custody Agreement" providing, in part:

> In any year in which the child support paid by [Scott] to [Nancy] equals or exceeds Four Thousand Two Hundred Dollars ($4,200), the exemption for the Internal Revenue Service shall pass to [Scott] and [Nancy] shall execute any documents or papers necessary to accomplish that end....

This Stipulation was incorporated into the divorce decree.

[¶ 38.] It is clear that trial courts do not have the authority to allocate the tax exemptions because federal tax laws control the issue. *Alexander v. Hamilton,* 525 N.W.2d 41, 45 (S.D.1994); *Voelker v. Voelker,* 520 N.W.2d 903, 909 (S.D.1994). However, the parties can enter into a private agreement to allocate the exemptions and we must uphold that agreement if it complies with the federal requirements. *See Jameson v. Jameson,* 306 N.W.2d 240, 243–44 (S.D.1981) *(Jameson II)* (stating the trial court could not obligate the child support obligor to provide for the children's college education, but the Stipulation between the parties to do so was valid and enforceable); *Weekley v. Weekley,* 1999 SD 162, ¶ 18, 604 N.W.2d 19, 24 (holding that "the parties bound themselves to the trial court's determination that California has jurisdiction over the child support issue.").

[¶ 39.] The Internal Revenue Code § 151(c) allows taxpayers an annual exemption amount for each "dependent" as defined in section 152(a). Under section 152(a), the term "dependent" means specified individuals, such as a son or daughter, "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer)...."

[¶ 40.] Generally, the custodial parent is entitled to the dependency exemption deduction for the children. IRC § 152(e)(1). However, the statute also sets forth specific exceptions under which the noncustodial parent is entitled to the exemptions. Scott argues that he falls within one of the exceptions and is entitled to the exemptions pursuant to section 152(e)(2): "Exception where custodial parent releases claim to exemption for the year:"

> A child of [divorced] parents . . . shall be treated as having received over half of his support during a calendar year from the noncustodial parent if –
>
> (A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and
>
> (B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.

[¶ 41.] Typically, the written declaration attached to the noncustodial parent's income tax return is IRS "Form 8332." However, other documents are acceptable as long as they "conform with the substance" of "Form 8332," which provides:

> (1) names of the children for which exemption claims were released;
>
> (2) years for which the claims were released;
>
> (3) signature of the custodial parent;
>
> (4) Social Security number of the custodial parent;
>
> (5) date of signature; and
>
> (6) name and social security number of the parent claiming the exemption.

*Neal v. Comm'r of Internal Revenue*, T.C.Memo. 1999–97, 1999 WL 167689 (1999). The written declaration must be in strict compliance with these requirements. *See White v. Comm'r of Internal Revenue*, T.C. Memo. 1996–438, 1996 WL 540111 (1996)(holding that a letter written and signed by the custodial parent failed "to 'conform with the substance' of Form 8332."). Within the written declaration, the custodial parent may waive her entitlement to use the exemptions annually, for a specified number of years or permanently. 33 Am.Jur.2d *Federal Taxation* 1249 (1999). Consequently, once the custodial parent signed a written declaration properly waiving her right to claim the exemptions, the noncustodial parent is entitled to claim them, as long as he complies with the Stipulation and attaches the written waiver to his income tax return.[8]

[¶ 42.] The conference opinion states that its decision that the custodial parent be given the dependent exemptions "is consistent with the spirit of the federal law. . . ." I respectfully disagree based on a review of the legislative history of IRC § 152(e). Prior to 1984, Congress provided an additional exception which required the noncustodial parent, seeking the dependency exemption, to provide "$1,200 or more for support of each child" and a determination that "the custodial parent did not 'clearly establish' that he or she provided more than the noncustodial parent for such child's support." *Cafarelli v. Comm'r of Internal Revenue*, T.C. Memo. 1994–265, 1994 WL 247954 (1994). This requirement was reduced to "$600 or more for support of each child" by 1986 and was entirely eliminated in 1996 because it presented:

> subjective and difficult problems of proof and substantiation. The Internal Revenue Service became involved in many disputes between parents who both claim the dependency exemption based on providing support over the ap-

---

8. When the custodial parent waives her entitlement to use the dependent exemptions, she "does not relinquish the child care credit, the earned income credit, or head of household status in the case of married persons living apart. . . ." 33 Am.Jur.2d *Federal Taxation* 1249 (1999).

plicable thresholds.... The Committee [wished] to provide more certainty by allowing the custodial spouse the exemption *unless that spouse waives his or her right to claim the exemption.* Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.

*Id.* (emphasis added). Clearly, the purpose behind the specified exceptions to the general rule that the custodial parent receives the dependent exemptions was to free the IRS from becoming involved in factual disputes over which parent provides over one-half of the child's support. The spirit behind IRC § 152(e)(2) is one of agility by allowing the parties to determine, between themselves, how to allocate the exemptions without encumbering IRS resources.

[¶ 43.] I agree with the conference opinion's statement that the issues of dependent exemptions and child support are "absolutely interlocking considerations." *Sarver v. Dathe,* 439 N.W.2d 548, 551 (S.D. 1989). However, the conference opinion's attempt to use this determination to support its conclusion that a trial court can modify an agreement allocating the dependency exemptions is strained. As I explained in my special concurrence therein:

> [T]he tax exemption is part of the child support issue.... The trial court has the power to reduce the amount required to be paid under the [child support] guidelines by a sum equal to the value of the exemption as child support in the event of a refusal by the custodial parent to agree or execute the necessary waiver. SDCL 25–7–7. This power stems from the direct effect the exemption has on the '[f]inancial condition of the parents' under subsection (1) relating to deviations from the guidelines and '[i]ncome taxes withheld' under subsection (1) relating to deductions from monthly gross income. SDCL 25–7–7.

*Id.* at 554 (Sabers, J., specially concurring) (internal citations omitted).[9] Obviously, the child support may be modified, but the parties' agreement to allocate the dependency exemptions can not be modified.

[¶ 44.] The conference opinion also states that once a trial court approves a Stipulation, "it also has the authority to later modify a provision as part of the overall modification of the decree." While this is true when dealing with support obligations, *it is not true* when dealing with issues that the trial court had no authority to initially impose. *See Jameson II,* 306 N.W.2d at 243–44. Furthermore, this decision does not improperly or illegally "bind the hands of judges" as claimed by the conference opinion. Judges have no authority to order a party to pay for a child's college education or to allocate federal tax exemptions. Only the parties can agree to impose those obligations on themselves. Judges have no authority over the agreement between the parties. We have provided ample warning that these types of agreements are binding and should be entered into cautiously because "it is not the role of courts in modification proceedings to relieve a party of his or her bad bargain." *Weekley,* 1999 SD 162, ¶ 19, 604 N.W.2d at 24 (quoting *Jameson v. Jameson,* 1999 SD 129, ¶ 20, 600 N.W.2d 577 (*Jameson IV*)) (citing *Olson v. Olson,* 1996 SD 90, ¶ 11, 552 N.W.2d 396, 399; *Whalen v. Whalen,* 490 N.W.2d 276, 283 (S.D.1992); *Jameson v. Jameson,* 90 S.D. 179, 239 N.W.2d 5, 7 (S.D.1976) (*Jameson I*)).

[¶ 45.] Here, the parties agreed that Scott would pay Nancy a monthly child support amount of $868, or $10,416 per year. It appears from the record that Scott is current on his child support obligations. The parties also agreed that "[i]n any year in which the child support paid by [Scott] to [Nancy] equals or exceeds ... $4,200, the exemption for the Internal Revenue Service shall pass to [Scott]...."

---

9. SDCL 25–7–7 was repealed in 1989 but replaced with similar language in SDCL 25– 7–6.10.

Scott fulfilled the stated condition to the passing of the exemptions and the exemption will continue to pass to Scott as long as he (1) continues to pay $4,200 in annual child support payments and (2) attaches, to his income tax return, a properly drafted declaration signed by Nancy in which she waives her right to the dependency exemptions. *See Agee v. Agee,* 1996 SD 85, ¶¶ 25–26, 551 N.W.2d 804, 807 (disallowing the exemptions to be taken by the non-custodial parent because the accompanying conditions were not satisfied). For every year that Scott satisfies the $4,200 condition, the parties agreed that Nancy "shall execute any documents or paper necessary" for Scott's claim of the exemptions. Therefore, Nancy's failure to provide the proper written declaration to Scott could result in contempt. *See Jameson II,* 306 N.W.2d at 243–44.

[¶ 46.] The loss of these bargained-for tax exemptions will result in a loss to Scott exceeding $700 per year. The trial court and the supreme court fail to compensate Scott for this loss. Therefore, their decisions are not only in error, but constitute abuses of discretion.

[¶ 47.] Thus, I vote to reverse the trial court's modification of the Stipulation which allocated the federal income tax dependent exemptions.

[¶ 48.] I would not award any attorney's fees to Nancy as she should not be the successful party when there is a clear violation of the law, a violation of the Stipulation and agreement and an abuse of discretion.

[¶ 49.] AMUNDSON, Justice, joins this special writing.